I5OAAJONF                        Jury Trial

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MATTHEW JONES,

                Plaintiff,

        v.                              16 CV 8080 (JGK)

ADAM MUNOZ, MICHAEL VACCARO,
CHRISTOPHER TREIBUG and
UNDERCOVER OFFICER #349,

                Defendants.

------------------------------x
                                        New York, N.Y.
                                        May 245, 2018
                                        9:00 a.m.

Before:

                        HON. JOHN G. KOELTL,

                                        District Judge

                        APPEARANCES

ALEXIS PADILLA
        Attorney for Plaintiff Jones

NEW YORK CITY LAW DEPARTMENT
        Attorneys for Defendants Munoz/Vaccaro/Treibig/UC349
BY:  MELANIE M. SPEIGHT
ASHLEY R. GARMAN

I5OAAJONF                    Jury Trial

1          (Case called)

2          THE COURT:  Good morning, all.

3          All right.  I'm giving you the opportunity to review.

4   I just want to indicate that I've given you the supplemental

5   brief jury charge asking the jurors to answer by a

6   preponderance of the evidence the following factual questions

7   and then substantially the three questions I were to ask the

8   jurors yesterday.

9          (Pause)

10         THE COURT:  All right.  Are the parties satisfied with

11  the supplemental jury charge and the supplemental verdict form?

12         MR. PADILLA:  Your Honor, I object to these questions.

13  I feel that or it's plaintiff's position that these questions

14  are essentially asking the jury to make the qualified immunity

15  determination.  The qualified immunity determination is for the

16  Court.  It's not properly given to the jury but if the Court in

17  its wisdom feels that these questions are appropriate, I would

18  just ask that the language, even if mistakenly, be removed

19  because I think there's a substantial risk that the jurors

20  could be confused about what the questions are actually asking.

21  And I think that that's purposely that the defendants would

22  like for the jurors to be confused and to answer these

23  questions in such a way that would bolster qualified

24  immunity -- and fact that the jury clearly answered the

25  question of whether the force used against my client was

1    reasonable.

2            I feel that in this case, your Honor, qualified

3    immunity is totally inappropriate.  The question of

4    reasonableness is a question of fact, not a question of law for

5    the Court.  The jury said that it was unreasonable when they

6    came back with their verdict.  So that's just the plaintiff's

7    position, your Honor.  Thank you.

8            THE COURT:  Well, you know first of all, what you've

9    said is somewhat internally inconsistent.  The law is clear

10   these days that qualified immunity is a question for the Court.

11   It's also clear that if there are issues of fact on which the

12   qualified immunity determination may turn, then those are

13   questions for the jury and not for the Court.  It's not always

14   easy to determine what those factual questions are, but that's

15   the law as it's been given and so I follow it as best I can.

16           What you have said does contain a kernel of wisdom and

17   I raised it yesterday, but what you've said sort of triggers it

18   in my mind.  There are actually two questions embedded in

19   Questions Two and Three and the answer "yes" or "no" doesn't

20   answer those questions.  The first question is the factual

21   question of, for example, in Question Two, the factual question

22   of was a second taser cycle needed to gain control of the

23   plaintiff's arms?  That's plainly a factual question and it

24   should be Question Number Two.

25           Question Number Three is:  Did Lieutenant Treubig

1    believe that a second taser cycle was needed to gain control of

2    the plaintiff's arms?

3             The advantage of breaking it down that way is those

4    are two factual questions and it leaves to the Court the

5    question of reasonableness.

6             MS. SPEIGHT:  Makes sense.  We have no problem with

7    that, your Honor.  But we do maintain that the language needs

8    to be reasonable even if mistaken.

9             THE COURT:  I know.  But isn't that to be argued to

10   me?

11            MS. SPEIGHT:  I'm missing something.

12            THE COURT:  No.  It's OK.  And isn't ultimately the

13   question whether no reasonable police officer could have used

14   the force under those circumstances given all of the

15   circumstances?  And that's not just a question with respect to

16   Lieutenant Treubig.  It's a question -- and it's certainly not

17   an easy question for the plaintiff to overcome.  And it's not a

18   question for the jury, whether no reasonable officer under the

19   circumstances could have believed that use of the taser was

20   reasonable, but that's certainly not something to be asked.

21            But the two factual questions it seems to me are, was

22   a second taser cycle needed to gain control and did Lieutenant

23   Treubig believe that a second taser cycle was needed?  And the

24   second question might not actually be very relevant to

25   qualified immunity.  But if you want me to ask while the jury

I5OAAJONF                    Jury Trial

1    is here, I might as well find out how they find as a fact with

2    respect to that issue.

3              MS. SPEIGHT:  Then, would your Honor have the same

4    approach with respect to Question Three?

5              THE COURT:  Yes.  When Lieutenant Treubig used the

6    taser was the plaintiff resisting arrest?  And then the next

7    question would be, Did Lieutenant Treubig believe that the

8    plaintiff was resisting arrest?

9              MS. SPEIGHT:  We agree, your Honor.

10             THE COURT:  Revise Questions Two and Three.

11             And with that, anything else?

12             MS. SPEIGHT:  No, no objections to the charge.

13             THE COURT:  And as I said yesterday, what I would do

14   is begin by polling the jury today with respect to their

15   verdict that they returned yesterday and then explain the

16   supplemental questions.

17             MS. SPEIGHT:  Thank you, your Honor.

18             (Recess)

19             THE COURT:  All right.  Please be seated.

20             I've made the changes.  We've passed out to you the

21   supplemental jury charge and the supplemental verdict form.

22   And just to point out what we changed on the supplemental jury

23   charge, we now say, "There are now seven such additional

24   questions, rather than three".

25             MR. PADILLA:  May I, your Honor?

1          THE COURT:  Yes.

2          MR. PADILLA:  Your Honor, I'm sorry.  Before I say

3    anything let me read over the questions.

4          (Pause)

5          MR. PADILLA:  Your Honor, just for the record, I would

6    like to object to all of these questions and to these questions

7    being submitted to the jury.  And I would cite to Barksdale v.

8    Colavita.  That's 506 Fed APX 8285, Second Circuit 2012.  And

9    also to Alla v. Verky.  It's 979 F. Supp. 2d 349, 370.  And I

10   cite those cases for the proposition that only questions of

11   factual determinations are appropriate for special

12   interrogatory.  I believe that these questions, particularly,

13   those that ask the jury to assess what the defendant believed

14   are not actually factual questions.  I believe that those

15   questions are subjective and subjective questions of that

16   nature are not appropriate as supplementary interrogatories or

17   special interrogatories.

18         So for the record, I would like to object to the jury

19   being given these questions.

20         Thank you.

21         THE COURT:  OK.  Were the cases that you cited to me

22   qualified immunity cases?

23         MR. PADILLA:  Yes, they were, your Honor.

24         THE COURT:  OK.  Defendant.

25         MS. SPEIGHT:  Well, I don't know if those cases

I5OAAJONF                    Jury Trial

 1   specifically, but it sounds like they're just for the

 2   proposition that factual issues should be resolved and that is

 3   what these special interrogatories do.  I believe this is the

 4   same objection that has been raised so we believe that they're

 5   appropriate.  His belief is a question of fact.

 6          THE COURT:  The final verdict will have been secured

 7   before the jury is asked these questions.  If any of these

 8   questions in fact are not a proper basis to consider for

 9   purposes of qualified immunity, then the parties can argue that

10   out to me and I will consider them.  But it would be

11   unfortunate if there was any question appropriate for the jury

12   that didn't get asked and if there was any factual question

13   that remained open that would be useful for determining

14   qualified immunity.  Otherwise, we would be left to speculate

15   about factual issues.

16          Now, it may be that the jury eventually cannot decide

17   unanimously on these factual issues, in which case we'll then

18   have to deal with the record as it is but at least we should

19   try.  The Court of Appeals is clear that factual issues are for

20   the jury in determining qualified immunity.  So then the

21   question is, should these or appropriate factual input into the

22   determination of qualified immunity?  OK.

23          Anything else before we call in the jury?

24          MS. SPEIGHT:  No, your Honor.

25          MR. PADILLA:  No, your Honor.

I5OAAJONF                    Jury Trial

```
 1              THE COURT:  OK.  Let's bring in the jury.

 2              (Jury present)

 3              THE COURT:  All right.  Please be seated, all.

 4         Good morning, ladies and gentlemen.  Good to see you

 5    all.

 6         When we left yesterday you had returned your verdict

 7    and I said that I wouldn't poll you yesterday because there

 8    were people who needed to leave and there were concerns about

 9    children and the like.  I deliberately put off polling the jury

10    on the verdict until this morning and I mentioned that after we

11    polled the yesterday there may be some additional questions.

12    But before we get to that, it's important to poll the jury with

13    respect to the verdict that you have returned.

14              So, Mr. Fletcher.

15              COURTROOM DEPUTY:  Ladies and gentlemen of the jury,

16    listen to your verdict as it stands recorded.

17              Question One.  Do you find that the plaintiff has

18    proved by a preponderance of the evidence that arresting the

19    plaintiff, any of the defendants violated the plaintiff's

20    rights by using excessive force as that term has been defined

21    for you in the Court's instruction?

22         "Vaccaro", your answer is "no".

23         "Munoz", your answer is "no".

24         "Treubig", your answer is "yes".

25         "UC 349", your answer is "no".
```

I5OAAJONF                        Jury Trial

1          Question Two:  Do you find that the plaintiff has

2   proved by a preponderance of the evidence that the plaintiff is

3   entitled to compensatory damages as that term has been defined

4   for you in the Court's instructions?

5          Your answer is "no".

6          Question Three.  What amount of nominal damages, not

7   to exceed one dollar, do you award the plaintiff on his

8   excessive force claim?

9          Your answer is "25 cents".

10          Question 4-A:  Do you find that the plaintiff has

11   proven by a preponderance of the evidence that the plaintiff

12   should be awarded punitive damages against any of the following

13   defendants?

14          "Vaccaro", your answer is "no".

15          "Munoz", your answer is "no".

16          "Treubig", your answer is "yes".

17          "UC 349" your answer is "no".

18          Question 4B.  What amount of punitive damages do you

19   find should be awarded against that defendant?

20          "Treubig", $30,000.

21          This verdict form is dated May 23, 2018 and signed by

22   the foreperson, Carl Bongani Hart, and by the remaining jurors,

23   Julie Novalle, Albino Montiero, Ian Michael Campbell, Rosalinda

24   Sagles, Peggy Tanusukma, Jean Michael Simeon and Yolanda Odiot.

25          Mr. Hart, is that your verdict?

I5OAAJONF                          Jury Trial

1              FOREPERSON:  Yes, it is.

2              COURTROOM DEPUTY:  Ms. Novalle, is that your verdict?

3              THE JUROR:  Yes.

4              COURTROOM DEPUTY:  Mr. Montiero is that your verdict?

5              THE JUROR:  Yes.

6              COURTROOM DEPUTY:  Mr. Campbell, is that your verdict?

7              THE JUROR:  Yes.

8              COURTROOM DEPUTY:  Ms. Sagles, is that your verdict?

9              THE JUROR:  Yes.

10             COURTROOM DEPUTY:  Ms. Tanusukma, is that your

11   verdict?

12             THE JUROR:  Yes.

13             COURTROOM DEPUTY:  Mr.  Simeon, is that your verdict?

14             THE JUROR:  Yes.  But my name is not correct.  It's

15   "Jean Daniel".

16             COURTROOM DEPUTY:  "Jean Daniel".  Excuse me.

17             Let the record reflect, the juror's name is Jean

18   Daniel Simeon.

19             THE JUROR:  Yes.

20             THE COURT:  Is that your verdict?

21             THE JUROR:  Yes.

22             COURTROOM DEPUTY:  Ms. Odiot, is that your?

23             THE JUROR:  Verdict.  Yes.

24             COURTROOM DEPUTY:  Let the record reflect the jury ahs

25   been polled and the verdict is unanimous.

I5OAAJONF                          Jury Trial

1            THE COURT:  All right.  Ladies and gentlemen, I always

2    show the verdict form then to the lawyers after the jurors have

3    been polled.  I'm showing the special verdict form to the

4    lawyers.

5            (Continued on next page)

I5OAAJONF                        Jury Trial

1              (Side bar)

2              THE COURT:  And there's a blank dash mark for

3    compensatory damages in 2B.

4              (Pause)

5              THE COURT:  All right.

6              MR. PADILLA:  Thank you.

7              (Continued on next page)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I5OAAJONF                          Jury Trial

1              (In Open Court)

2              THE COURT:  Ladies and gentlemen, thank you for

3     returning to court this morning.

4              I mentioned before you began deliberations that after

5     you returned the special verdict form I may have certain

6     additional questions for you to answer about this case again,

7     principally by "yes" or "no" answers.  There are now seven such

8     additional questions.  Nothing about these questions asks you

9     to revisit the verdict you returned yesterday afternoon.

10    Indeed, I instruct you that the verdict you returned is final

11    and you should not attempt to revisit it or change it.

12             In an effort to assist you, your answers to these

13    additional questions will be contained on a supplemental form

14    to be completed by you in the jury room after you have begun

15    your deliberations.  The questions will be answered by "yes" or

16    "no" answers.  Your answer to each of these questions must be

17    unanimous and should be based on the facts you find by a

18    preponderance of the evidence.

19             I will distribute copies of the supplemental verdict

20    form now.  Please do not make any notes on these copies.  They

21    will be collected at the end of my instructions and I will then

22    give you the original supplemental verdict form which you will

23    complete in the course of your deliberations.

24             I will now review the questions on the supplemental

25    verdict form with you.

I5OAAJONF                          Jury Trial

1              Supplemental Question One.  Did Lieutenant Treubig say

2     he would use the taser before he used it; yes or no?

3              Proceed to supplemental Question Two.

4              Supplemental Question Two.  Was a second taser cycle

5     needed to gain control of the plaintiff's arms; yes or no?

6              Proceed to supplemental Question Three.

7              Supplemental Question Three.  Did Lieutenant Treubig

8     believe a second taser cycle was needed to gain control of the

9     plaintiff's arms; yes or no?

10             Proceed to Supplemental Question Four.

11             Supplemental Question Four.  Was the plaintiff

12    resisting arrest when Lieutenant Treubig used the taser the

13    first time; yes or no?

14             Proceed to Question Five.

15             Supplemental Question Five.  Did Lieutenant Treubig

16    believe that the plaintiff was arresting arrest when Lieutenant

17    Treubig used the taser the first time; yes or no?

18             Proceed to Supplemental Question Six.

19             Supplemental Question Six.  Was the plaintiff

20    resisting arrest when Lieutenant Treubig used the taser the

21    second time; yes or no?

22             Proceed to Supplemental Question Seven.

23             Supplemental Question Seven.  Did Lieutenant Treubig

24    believe that the plaintiff was resisting arrest when Lieutenant

25    Treubig used the taser the second time; yes or no?

1          Please proceed to sign the supplemental verdict form

2     and then the last page.  The jury reached the above verdict

3     unanimously and then signature lines for the foreperson and

4     each of the other jurors and then date it, New York, New York.

5          When you answer the questions on the special verdict

6     form you are to answer them based on the facts that you find by

7     a preponderance of the evidence that has been presented to you.

8     Your answer to each question must be unanimous.  After your

9     deliberations are complete and you have reached answers to

10    these seven questions, you will indicate your verdict on the

11    original supplemental verdict form which I will send with you

12    into the jury room.

13         As before, please leave the copies of the supplemental

14    verdict forms in the jury box when you leave to deliberate.

15    After your deliberations, the foreperson will sign the bottom

16    the original supplemental verdict form and then each of the

17    remaining jurors will sign the form also.  I remind you that

18    your answer to each question must be unanimous.  The foreperson

19    will then advise the marshal that a verdict has been returned.

20    The foreperson should keep the supplemental verdict form and

21    hand it up to the Court after you have returned to the

22    courtroom.  It is important that you adhere strictly to the

23    instructions on the form.  Please do not add anything that is

24    not called for by the supplemental verdict form.

25         Members of the jury, the marshal was sworn yesterday

I5OAAJONF                          Jury Trial

1     and is there to protect you during the course of your

2     deliberations and you may now retire to deliberate on the

3     supplement questions and we will shortly send you the

4     supplemental charge that I just read and the supplemental

5     verdict form.

6            All rise.  And the jury should follow the marshal to

7     the jury room.

8            (deliberations pending supplement verdict)

9            THE COURT:  Please be seated.

10           We have a supplemental verdict form and a supplemental

11    charge.  I may have said "returned".  "The foreperson will

12    advise the marshal that a verdict has been returned".  Your

13    written copy says "reached".

14           Does anyone want me to change "reached" to "return"?

15           MR. PADILLA:  No, your Honor.

16           MS. SPEIGHT:  No, your Honor.

17           THE COURT:  OK.  Into the jury room we will send the

18    supplemental jury charge and the supplemental jury form.

19    Please inspect the supplemental jury charge and the

20    supplemental verdict form and confirm for us that you've done

21    that and then give them to Mr. Fletcher.

22           (Pause)

23           THE COURT:  OK.  You've inspected the supplemental

24    charge and supplemental verdict form and given them to

25    Mr. Fletcher?

I5OAAJONF                        Jury Trial

1          MR. PADILLA:  Yes.

2          MS. SPEIGHT:  Yes, your Honor, we have.

3          THE COURT:  OK.  Mr. Fletcher will now give them to

4  the marshal.

5          (Pause)

6          THE COURT:  I've also signed letters for the jurors to

7  give to their employers indicating jury service on May 21, 22,

8  23 and 24.  And the parties are welcome to inspect those

9  letters.  Mr. Fletcher will give them to the jury later.

10          (Pause)

11          THE COURT:  Anything further for me right now?

12          MS. SPEIGHT:  No, your Honor.

13          MR. PADILLA:  No, your Honor.  Thank you.

14          THE COURT:  OK.  See you later.

15          (Recess)

16          THE COURT:  Please be seated.

17          Mr. Fletcher advises that the marshal advises that the

18  jury indicates they have reached a verdict.  Do the parties

19  want the jurors to put that in a note or shall we simply call

20  the jurors in?

21          MR. PADILLA:  I think we should call them in, your

22  Honor.

23          MS. SPEIGHT:  We'd also like to just call them in.

24          THE COURT:  OK.  Let's bring in the jury.

25          (Jury present)

I5OAAJONF                          Jury Trial

1              THE COURT:  All right.  Please be seated, all.

2              Mr. Foreperson, the marshal indicates that you have

3    reached a verdict on the supplemental questions.

4              Is that correct?

5              FOREPERSON:  Yes.

6              THE COURT:  Please hand it up to Mr. Fletcher.

7              (Pause)

8              COURTROOM DEPUTY:  Mr. Foreperson, will you please

9    rise.  And will the foreperson answer the supplemental

10   questions as put to him in the matter of Jones v. Munoz, et al.

11             Supplemental Question One.  Did lieutenant Treubig say

12   he would use the taser before he used it?

13             FOREPERSON:  Yes.

14             COURTROOM DEPUTY:  Supplemental Question Two.  Was the

15   second taser cycle needed to gain control of the plaintiff's

16   arms?

17             FOREPERSON:  No.

18             COURTROOM DEPUTY:  Supplemental Question Three.  Did

19   Lieutenant Treubig believe that a second taser cycle was needed

20   to gain patrol of the plaintiff's arms?

21             FOREPERSON:  Yes.

22             COURTROOM DEPUTY:  Supplement Question Four.  Was the

23   plaintiff resisting arrest when Lieutenant Treubig used the

24   taser the second time?

25             THE JUROR:  No.

1          MR. PADILLA:  No.  No.

2          THE COURT:  No.  "The first time".

3          COURTROOM DEPUTY:  Excuse me.  I'm sorry.

4          Was the plaintiff resisting arrest -- This is

5  Supplemental Question Four.

6          Was the plaintiff resisting arrest when Lieutenant

7  Treubig used the taser the first time?

8          THE JUROR:  Yes.

9          COURTROOM DEPUTY:  Supplemental Question Five.  Did

10  Lieutenant Treubig believe that the plaintiff was resisting

11  arrest when Lieutenant Treubig used the taser the first time?

12          THE JUROR:  Yes.

13          COURTROOM DEPUTY:  Supplemental Question Six.  Was

14  plaintiff resisting arrest when Lieutenant Treubig used the

15  taser the second time?

16          THE JUROR:  No.

17          COURTROOM DEPUTY:  Supplemental Question Seven.  Did

18  Lieutenant Treubig believe that the plaintiff was resisting

19  arrest when Lieutenant Treubig used the taser the second time?

20          THE JUROR:  Yes.

21          COURTROOM DEPUTY:  Shall I poll the jury?

22          THE COURT:  Poll the jury, please.

23          COURTROOM DEPUTY:  Ladies and gentlemen of the jury,

24  listen to your verdict as it stands recorded.

25          Supplemental Question One:  Did Lieutenant Treubig say

I5OAAJONF                    Jury Trial

1    he would use the taser before he used it?  Your answer is

2    "yes".

3            Supplemental Question Two.  Was a second taser cycle

4    needed to gain control of the plaintiff's arms?  Your answer is

5    "no".

6            Supplemental Question Three.  Did lieutenant Treubig

7    believe that a second taser cycle was needed to gain control of

8    the plaintiff's arms?  Your answer is "yes".

9            Supplemental Question Four.  Was the plaintiff

10   resisting arrest when Lieutenant Treubig used the taser the

11   first time?  Your answer is "yes".

12           Supplemental Question Five.  Did Lieutenant Treubig

13   believe that the plaintiff was resisting arrest when Lieutenant

14   Treubig used the taser the first time?  Your answer is "yes".

15           Supplemental Question Six.  Was the plaintiff

16   resisting arrest when Lieutenant Treubig used the taser the

17   second time?  Your answer is "no".

18           Supplemental Question Seven.  Did Lieutenant Treubig

19   believe that the plaintiff was resisting arrest when Lieutenant

20   Treubig used the taser the second time?  Your answer is "yes".

21           The supplemental verdict form is dated May 24, 2018

22   and signed by the foreperson, Kevin Bongani Hart and by the

23   remaining jurors, Julie Novalle, Albina Monteiro Ian Michael

24   Campbell, Roslinda Sagles, Peggy Tanusukma, Jean Daniel Simeon

25   and Yolanda Odiot.

I5OAAJONF                         Jury Trial

1            Mr. Hart, is that your verdict on the supplemental

2    form?

3            THE JUROR:  Yes.

4            COURTROOM DEPUTY:  Ms. Novalle, is that your verdict

5    on the supplemental form?

6            THE JUROR:  Yes.

7            COURTROOM DEPUTY:  Ms.Monteiro, is that your verdict

8    on the supplemental form?

9            THE JUROR:  Yes.

10           COURTROOM DEPUTY:  Mr. Campbell, is that your verdict

11   on the supplemental form?

12           THE JUROR:  Yes.

13           COURTROOM DEPUTY:  Mr. Sagles, is that your verdict on

14   the supplemental form?

15           THE JUROR:  Yes.

16           COURTROOM DEPUTY:  Ms. Tanusukma, is that verdict on

17   the supplemental form?

18           THE JUROR:  Yes.

19           COURTROOM DEPUTY:  Mr. Simeon, is that your verdict on

20   the supplemental form?

21           THE JUROR:  Yes.

22           COURTROOM DEPUTY:  Ms. Odiot, is that your verdict on

23   the supplemental form?

24           THE JUROR:  Yes.

25           COURTROOM DEPUTY:  The jurors have been polled on the

I5OAAJONF                          Jury Trial

1  supplemental verdict and the verdict is unanimous.

2          THE COURT:  All right.  Please show it to the

3  attorneys please.

4          (Continued on next page)

5          (Side bar)

6          THE COURT:  I'm showing the supplemental verdict form

7  to the lawyers.  Third page of the form, second set of

8  questions.  OK?

9          MR. PADILLA:  Thank you, your Honor.

10          THE COURT:  And signed by all of the jurors.

11          MR. PADILLA:  Thank you.

12          MS. SPEIGHT:  Thank you.

13          THE COURT:  Anything else before I discharged the

14  jurors?

15          MR. PADILLA:  No, your Honor.

16          MS. SPEIGHT:  No, your Honor.

17          THE COURT:  Thank you.

18          (Continued on next page)

19

20

21

22

23

24

25

1          (In Open Court)

2          THE COURT:  Ladies and gentlemen of the jury, I said

3     earlier in the trial that you were a very good jury and you are

4     a very good jury.  You have been prompt and efficient.  Many

5     judges use this occasion when a jury has brought in its verdict

6     and is finished its deliberations to thank the jurors for their

7     deliberations and for their service.  But many years ago I

8     clerked for a great judge of this court, not one of the ones

9     who have the paintings around the room but a truly great judge

10    of this court who made it a practice never to thank jurors

11    because he told jurors that what they had done was to perform

12    one of the highest and noblest obligations of citizenship.

13          They had acted as finders of fact.  They had

14    participated in the administration of justice.  They were

15    public servants.  And for doing that, the jurors are entitled

16    to the deep personal satisfaction of knowing that they have

17    performed a public service.  And that deep personal

18    satisfaction is far more important and lasting than the

19    ephemeral thanks of the Court and the parties.

20          So, having sat with you over these last few days which

21    were long days, having observed your conscientiousness, I

22    believe that all of you take away from this process that deep

23    personal satisfaction of knowing that you have performed a

24    public service and that gives me satisfaction.

25          There are just a few tasks left to me.  First, I will

I5OAAJONF                        Jury Trial

1    discharge you as jurors in this case.  You're no longer under

2    my instructions not to talk about the case, not to look at or

3    listen to anything to do with the case.  You are free to talk

4    about the case.  But I always urge jurors as a matter of

5    prudence and courtesy to all of your fellow jurors not to talk

6    about your deliberations.

7            The reason for that is I think it encourages

8    confidentiality and the exchange of views in the jury selection

9    process.  So I urge jurors not to talk about their

10   deliberations but I also understand that you're no longer under

11   my orders and you are no longer under any of my strictures.  I

12   just ask as a matter of prudence and courtesy that you not talk

13   about your deliberations but that is up to you.

14           All of the technical details will be taken care of by

15   mail.  I can't assure you that the check is in the mail but it

16   soon will be.  Mr. Fletcher will give you the letters for your

17   employers or anyone else who needs a letter indicating that you

18   have been a juror over these four days.  He'll give those to

19   you before he leaves if he hasn't already done that.  You don't

20   have to go back downstairs to the central jury room.  As I said

21   everything will be taken care of through the mail.

22           And so there's a only one last task for me to do which

23   is to ask everyone in the courtroom to stand as a final sign of

24   respect to all of you.

25           All rise, please.  And the jurors should now follow

1    the marshal to the jury room.

2              (Jury discharged)

3              THE COURT:  All right.  Please be seated.

4              The defendants or at least one defendant at this point

5    had indicated a desire for post verdict motions and I raised

6    the question of where the motion with respect to qualified

7    immunity would fit into that process.  I appreciate that

8    there's a, defendant had indicated a Rule 50 motion, a desire

9    to make a motion with respect to qualified immunity.  What

10   would the parties like to do?  Either side, of course, has the

11   opportunity to make motions, whatever motions there may be.

12             MS. SPEIGHT:  We need to think about it, your Honor.

13             THE COURT:  Did the plaintiff want to say something?

14             MR. PADILLA:  Only that I move to judgment entered on

15   behalf of the plaintiff.

16             THE COURT:  OK.  The plaintiff wants me to enter

17   judgment.  Of course it would be judgment in favor of three of

18   the defendants and for the plaintiff against one defendant and

19   then the question, the rules generally say that judgment should

20   be entered promptly after a verdict and then the motions tend

21   to be post judgment motions but I'll certainly -- that's what

22   the plaintiff is looking for, judgment in favor of the

23   plaintiff against one defendant and in favor of three

24   defendants against the plaintiff and I should enter the

25   judgment promptly.

I5OAAJONF                    Jury Trial

1              MR. PADILLA:  That was the jury's verdict, your Honor.

2              THE COURT:  OK.

3              MS. SPEIGHT:  We would renew our Rule 50 application

4    actually to seek a grant of qualified immunity now, your Honor.

5    Based on the record and based on the preserved oral

6    application, we believe that it is warranted.

7              We thought at your suggestion last night about the

8    timing and we would like to resolve the question of qualified

9    immunity before making additional Rule 50 motion.  So if your

10   Honor will not grant the application today and would like us to

11   do briefing, then we would like to do that before judgment is

12   entered and before we do additional post trial motions.

13             THE COURT:  It would be useful to me to have both side

14   spell out what they want because my recollection of the rules

15   is that the motions to be made post verdict are the post

16   judgment motions, rather than for that period of time after

17   verdict before judgment.  They're rather after judgment.  But I

18   don't want to decide anything like that without at least having

19   the views of the parties and where the qualified immunity comes

20   in.  OK?

21             MS. SPEIGHT:  OK, your Honor.

22             THE COURT:  So, could you send me letters by, promptly

23   like next Tuesday?  I believe you're going to be out of town.

24             MS. SPEIGHT:  I will.  I won't be back until the 5th

25   but we can do that, your Honor.

1          THE COURT:  OK.  There's another issue that should be

2     addressed and it's not for me.  It's for all of you.  And that

3     is the question of a settlement.  You've now heard the jury

4     verdict and you've heard the supplemental questions, the

5     answers to the supplemental questions.  It's perfectly clear

6     that if you don't resolve the case, the case will not be

7     resolved by me.  I will come to a resolution as fast as I can

8     but I will not be the final word and it will only be after

9     considerably more effort and expense on your time before there

10    is a final decision, whatever way it is.  So I simply set that

11    out for you.  Meanwhile, I will decide whatever the motions are

12    that are before me.

13          OK.  Anything else?

14          MR. PADILLA:  No.  Thank you, your Honor.

15          And thank you to everyone.

16          THE COURT:  OK.

17          MS. SPEIGHT:  Nothing else from us, your Honor.

18          Thank you.

19          THE COURT:  Have a good day.

20          MR. PADILLA:  Your Honor, I think there is one just

21    logistically --

22          Could you explain, sir?

23          THE MARSHAL:  Yes.  The writ has to be satisfied.  We

24    have to get notification so that we could send the plaintiff

25    back to whatever facility he was supposed to go to and there is

I5OAAJONF                      Jury Trial

1     no delay.

2              THE COURT:  Yes.  I'll satisfy the writ.

3              THE MARSHAL:  Thank you, your Honor.

4              THE COURT:  You can bring it later into chambers.

5              THE MARSHAL:  Thank you, your Honor.

6              MR. PADILLA:  Thank you, your Honor.

7              THE COURT:  OK.  We are adjourned.

8              (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25