16-CV-8080 (JGK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW JONES,

Plaintiff,

-against-

LIEUTENANT CHRISTOPHER TREUBIG,

Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LIEUTENANT CHRISTOPHER TREUBIG'S MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CIV. P. 59 AND MOTION FOR REMITTITUR**

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:*
*Melanie Speight*
*Tel:  (212) 356-2425*

# TABLE OF CONTENTS

**Page**

CERTIFICATION OF COMPLIANCE WITH
INDIVIDUAL PRACTICE RULE IID ............................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................... 1

STANDARD OF LAW..................................................................................................... 4

ARGUMENT

       POINT I

              COUNSEL FOR PLAINTIFF'S REPEATED AND
              COMPOUNDED IMPROPER STATEMENTS
              DURING SUMMATION WARRANT A NEW
              TRIAL............................................................................................ 5

       POINT II

              THE JURY'S PUNITIVE DAMAGE AWARD
              MUST BE SET ASIDE AS UNSUPPORTED BY
              THE RECORD AND THE LAW, OR, REMITTED ........................... …12

CONCLUSION................................................................................................................ 17

## <u>CERTIFICATION OF COMPLIANCE WITH INDIVIDUAL PRACTICE RULE IID</u>

**MELANIE SPEIGHT**, an attorney duly admitted to practice in the United States District Court for the Southern District of New York, certifies under penalty of perjury and pursuant to 28 U.S.C. §1746 that the following is true and correct:

1.  I am a Senior Counsel in the office of James E. Johnson, Corporation Counsel of the City of New York, and attorney for defendant Lieutenant Christopher Treubig.

2.  This Memorandum of Law in Support of Defendant Lieutenant Treubig's Motion for a New Trial Pursuant to Fed. R. Civ. P. 59 and Motion for Remittitur contains 5,337 words and comports with Provision II D of Your Honor's Individual Practices dated May 28, 2020.

Dated:        New York, New York
              September 4, 2020

                            JAMES E. JOHNSON
                            Corporation Counsel of the City of New York
                            *Attorney for Defendant Treubig*
                            100 Church Street, 3rd Floor
                            New York, New York 10007
                            (212) 356-2425


                    By:     /s/ *Melanie Speight*
                            Melanie Speight
                            *Senior Counsel*

ii

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Pages**

Benson v. Family Dollar Operations, Inc.,
 755 F. App'x 52 (2d Cir. 2018) ...........................................................................................6

Bevevino v. Saydjari,
 574 F.2d 676 (2d Cir. 1976)................................................................................................4

BMW of N. Am. V. Gore,
 517 U.S. 559 (1996).............................................................................................. 13, 15-16

Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,
 356 U.S. 525 (1958)............................................................................................................4

Carey v. Piphus,
 435 U.S. 247 (1978)..........................................................................................................13

Coleman v. Siedel,
 533 F. Supp. 593 (D. Conn. 1980)....................................................................................14

Collado v. City of N.Y.,
 396 F. Supp. 3d 265 (S.D.N.Y. 2019)...........................................................................9, 14

Crockett v. City of N.Y.,
 720 F. App'x 85 (2d Cir. 2018) ...........................................................................................7

Earl v. Bouchard Transp. Co.,
 917 F.2d 1320 (2d Cir. 1990)..............................................................................................5

Fisher v. Mermaid Manor Home for Adults, LLC,
 No. 14-CV-3461 (WFK) (JO), 2016 U.S. Dist. LEXIS 174364 (E.D.N.Y. Dec.
 16, 2016) ...........................................................................................................................16

Figueroa v. Mazza,
 59 F. Supp. 3d 481 (E.D.N.Y. 2014) .................................................................................13

Fineman v. Armstrong World Indus.,
 980 F.2d 171 (3d Cir. 1992)................................................................................................7

Gasperini v. Center for Humanities, Inc.,
 518 U.S. 415 (1996)............................................................................................................4

Greenway v. Buffalo Hilton Hotel See Minneapolis,
 143 F.3d 47 (2d Cir. 1998)..................................................................................................5

Guzman v. Jay,
    303 F.R.D. 186 (S.D.N.Y. 2014) ...................................................................................4, 14

Isaac v. City of N.Y.,
    271 F. App'x 60 (2d Cir. 2008) ...........................................................................................5

Jennings v. Yurkiw,
    No. 14-CV-6377 (SMG), 2018 U.S. Dist. LEXIS 186602 (E.D.N.Y. Oct. 31,
    2018) ................................................................................................................................15

Jones v. Muniz, 349 F. Supp. 3d 377 (S.D.N.Y. 2018) reversed and remanded by
    Jones v. Treubig, 963 F.3d 214 (2d Cir. 2020). .............................................................14

Jones v. Treubig,
    963 F.3d 214 (2d Cir. 2020) .............................................................................................14

Kirsch v. Fleet St., Ltd.,
    148 F.3d 149 (2d Cir. 1998) ...............................................................................................4

Marcic v. Reinauer Transp. Cos.,
    397 F.3d 120 (2d Cir. 2005) ............................................................................................5,8

Matthews v. CTI Container Transp. Int'l, Inc.,
    871 F.2d 270 (2d Cir. 1989) ...............................................................................................6

Meide Zhang v. Liang Zhang,
    No. 16-CV-4013 (LGS), 2019 U.S. Dist. LEXIS 24372 (S.D.N.Y. Feb. 14,
    2019) ..................................................................................................................................6

Miner v. City of Glens Falls,
    999 F.2d 655 (2d Cir. 1993) .............................................................................................13

Munafo v. Metropolitan Transp. Auth.,
    381 F.3d 99 (2d Cir. 2004) .................................................................................................4

Patrolmen's Benevolent Ass'n of the City of the City of N.Y. v. City of N.Y.,
    310 F.3d 43 (2d Cir. 2002) ...............................................................................................13

Philip Morris USA v. Williams,
    549 U.S. 346 (2007) ..................................................................................................9,12,15

Raedle v. Credit Agricole Indosuez,
    670 F.3d 411 (2d Cir. 2012) ...............................................................................................4

Razzano v. Cty. of Nassau,
    No. 07-CV-3983 (ADS) (AKT), 2012 U.S. Dist. LEXIS 40346 (E.D.N.Y.
    Feb. 27, 2012) ..................................................................................................................13

Shu-Tao Lin v. McDonnell Douglas Corp.,
   742 F.2d 45 (2d Cir. 1984)....................................................................................5

Smith v. Lightning Bolt Prods., Inc.,
   861 F.2d 363 (2d Cir. 1988)..................................................................................4

St. Paul & Sault Ste. Marie Ry. Co. v. Moquin,
   283 U.S. 520 (1931)..............................................................................................5

State Farm Mut. Auto. Ins. Co. v. Campbell,
   538 U.S. 408 (2003)........................................................................................12, 15

Tesser v. Bd. of Educ. of City Sch. Dist. of City of N.Y.,
   190 F. Supp. 2d 430 (E.D.N.Y. 2002) .................................................................4,5

United States v. Clark,
   593 F. App'x 53 (2d Cir. 2014) ...........................................................................7

## **Statutes**

42 U.S.C. § 1983................................................................................................1, 13

Fed. R. Civ. P. 50...................................................................................................3

Fed. R. Civ. P. 59................................................................................................3,4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
MATTHEW JONES

                              Plaintiff,

             -against-                       16-CV-8080 (JGK)

LIEUTENANT CHRISTOPHER TREUBIG,

                             Defendant.
------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LIEUTENANT CHRISTOPHER TREUBIG'S MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CIV. P. 59; AND MOTION FOR REMITTITUR

### PRELIMINARY STATEMENT

This case is now about whether Lieutenant Christopher Treubig, an individual member of the New York City Police Department, must bear a $30,000 award of punitive damages against him when the verdict was based on appeals to prejudice, passion, and sympathy, rather than a finding of proof of liability.  Defendant respectfully submits that the answer to this question should be no.  In this instance, a just result requires a new trial or vacatur of the punitive damages award.

On April 7, 2015, New York City Police Officers Adam Muniz, Michael Vaccaro, Undercover Officer ("UC") 349, and Lieutenant Christopher Treubig used force in order to effectuate plaintiff's lawful arrest.  Plaintiff commenced this action, alleging excessive force pursuant to 42 U.S.C. § 1983, against all four officers. On May 21, 2018, the parties began a jury trial.  At the close of evidence, plaintiff's counsel delivered an inflammatory and prejudicial summation that appealed to widespread tensions regarding policing in America and, particularly, in New York.  Plaintiff's counsel appealed to unfortunate prejudices against police officers, widespread concerns about disparate treatment based on race, and invited the jury to consider

police officers in the abstract, as a monolith, rather than to consider the evidence in relation to the individual police officer defendants in this case.  Despite the Court's efforts to cure some of these defects, and despite defendants' objections and requests for additional instruction, plaintiff's ambit paid off.

The jury sent a series of notes in deliberations asking "If we answer "no" for a defendant in Question One, [Liability] can we still answer "yes" for Question Four, punitive? We are worried that a "no" in Question One ignores responsibility in the rest of the document." (Trial Transcript ("TT"), annexed to the Declaration of Melanie Speight, dated September 4, 2020 ("Speight Declaration"), as Exhibit ("Ex.") D, at 390:1-4), and later, "Are we allowed to make a statement to the Court in addition to our verdict?" (Ex. D, TT, 397: 14-18).  In short, the jury openly struggled to reconcile the sentiments invited by plaintiff's summation and the legal instruction given by the Court.

On May 24, 2018, the jury returned a general verdict in response to a Special Verdict Form.  The jury found that plaintiff had proven his excessive force claim against Lieutenant Treubig, but had failed to do so with respect to P.O. Muniz, P.O. Vaccaro, and UC 349.  (Question 1).  The jury found that plaintiff failed to prove that he was entitled to compensatory damages. (Question 2).  Initially, the jury also declined to award plaintiff nominal damages.  (Question 3).  The jury awarded plaintiff $30,000 in punitive damages against Lieutenant Treubig.  (Questions 4(a) and 4(b)).  Only upon prompting by the Court, the jury amended their verdict to award nominal damages in the amount of 25 cents.

At defendant's request, the jury was then given a Supplemental Verdict Form with seven factual questions, and answered each question, unanimously, as follows:

(1) Did Lieutenant Treubig say he would use the taser before he used it? Yes.

(2) Was a second taser cycle needed to gain control of the plaintiff's arms? No.

(3) Did Lieutenant Treubig believe that a second taser cycle was needed to gain control of the plaintiff's arms? Yes.

(4) Was the plaintiff resisting arrest when Lieutenant Treubig used the taser the first time? Yes.

(5) Did Lieutenant Treubig believe that the plaintiff was resisting arrest when Lieutenant Treubig used the taser the first time? Yes.

(6) Was the plaintiff resisting arrest when Lieutenant Treubig used the taser the second time? No.

(7) Did Lieutenant Treubig believe that the plaintiff was resisting arrest when Lieutenant Treubig used the taser the second time? Yes.

Based on the jury's responses and the evidence presented at trial, defendant Lieutenant Treubig renewed his motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 based on qualified immunity.  In doing so Lieutenant Treubig expressly reserved the right to seek additional relief pursuant to Fed. R. Civ. P. 59 when and if it was appropriate after the Court reached a decision on qualified immunity. By Order, dated November 21, 2018, the Court granted defendant's motion for judgment as a matter of law based on qualified immunity.  On November 27, 2018, judgment was entered in favor of all defendants.

Plaintiff appealed the judgment only with respect to the Court's decision granting Lieutenant Treubig qualified immunity.  By Order, dated June 26, 2020, the Court of Appeals for the Second Circuit determined that the verdict against Lieutenant Treubig should be reinstated and remanded the case for further proceedings.  Subsequently, over defendant's objections, on the Court entered judgment against Lieutenant Treubig on August 7, 2020.  Defendant now seeks

relief pursuant to Fed. R. Civ. P. 59(a) and (e).  Specifically, for the reasons set forth herein, defendant respectfully requests that the Court order a new trial or vacate the jury's award of damages.

## STANDARD OF LAW

Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, "[t]he court may, on motion, grant a new trial on all or some of the issues – and to any party … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a).  "A motion for a new trial, pursuant to Rule 59, may be granted when the district court is 'convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'"  Tesser v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 190 F. Supp. 2d 430, 440 (E.D.N.Y. 2002) (quoting Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 370 (2d Cir. 1988)).  In making this determination, the Court "may weigh the evidence [itself] and need not view the evidence in the light most favorable to the verdict winner." Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 418 (2d Cir. 2012).  In addition, the Court may grant a new trial "even if there is substantial evidence to support the verdict." Bevevino v. Saydjari, 574 F.2d 676, 683 (2d Cir. 1976).

Pursuant to Rule 59(e) of the Federal Rules, a court can grant a motion to alter or amend a judgment "to correct a clear error of law or prevent manifest injustice." Guzman v. Jay, 303 F.R.D. 186, 197 (S.D.N.Y. 2014) (quoting Munafo v. Metropolitan Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004)).  The Court has discretion to overturn a jury verdict "for excessiveness and order[] a new trial without qualification." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 165 (2d Cir. 1998) (citing Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 433(1996) (quoting Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 540 (1958))).  The trial court is also empowered to "enter a conditional order of remittitur, compelling a plaintiff to choose

between reduction of an excessive verdict and a new trial." <u>Kirsch</u>, 148 F.3d at 165.  Remittitur "is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial."  <u>Earl v. Bouchard Transp. Co.</u>, 917 F.2d 1320, 1328 (2d Cir. 1990) <u>quoting</u> <u>Shu-Tao Lin v. McDonnell Douglas Corp.</u>, 742 F.2d 45, 49 (2d Cir. 1984).   In calculating a remittitur of an excessive jury award, a district court should remit the jury's award to the maximum amount that would be upheld by the district as not excessive.  <u>See</u> <u>Earl</u>, 917 F.2d at 1330.

## <u>ARGUMENT</u>

### POINT I

### COUNSEL FOR PLAINTIFF'S REPEATED AND COMPOUNDED IMPROPER STATEMENTS DURING SUMMATION <u>WARRANT A NEW TRIAL</u>

"Quite plainly, a party is entitled to a new trial when opposing counsel's conduct causes prejudice to that party by appealing to a jury's possible biases, thereby unfairly influencing its verdict." <u>Greenway v. Buffalo Hilton Hotel See Minneapolis</u>, 143 F.3d 47, 51 (2d Cir. 1998) (citing <u>St. Paul & Sault Ste. Marie Ry. Co. v. Moquin</u>, 283 U.S. 520, 521, (1931) (setting aside a verdict based on appeals to passion and prejudice); <u>accord</u> <u>Tesser v. Bd. of Educ.</u>, 370 F.3d 314, 321 (2d Cir. 2004); <u>Isaac v. City of N.Y.</u>, 271 F. App'x 60, 64 (2d Cir. 2008). Admittedly, one prejudiced by an opposing party's misconduct seeking a new trial "faces a heavy burden," because, in order for a new trial to be warranted, the offending attorney's conduct must truly "infect a trial with undue prejudice or passion."  <u>Marcic v. Reinauer Transp. Cos.</u>, 397 F.3d 120, 124 (2d Cir. 2005) (internal quotation marks omitted). The burden, while heavy, is not insurmountable. While acknowledging that "[n]ot every improper or poorly supported remark made in summation irreparably taints the proceedings," the Court of Appeals

for the Second Circuit has determined that "if counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury," a new trial should be granted.  Matthews v. CTI Container Transp. Int'l, Inc., 871 F.2d 270, 278 (2d Cir. 1989).

When summation misconduct is alleged, the Court "must consider remarks in a summation in their entirety, not in isolation."  Guzman v. Jay, 303 F.R.D. 186, 194 (S.D.N.Y. 2014).  A party's objections to opposing counsel's conduct during trial give weight to a motion for a new trial.  Even if a party failed to object to some improper statements made during trial, when viewed in its entirety if the conduct causes error that is "so serious and flagrant that it goes to the very integrity of the trial," then a new trial is still appropriate.  Meide Zhang v. Liang Zhang, No. 16-CV-4013 (LGS), 2019 U.S. Dist. LEXIS 24372, at *11 (S.D.N.Y. Feb. 14, 2019) (citing Benson v. Family Dollar Operations, Inc., 755 F. App'x 52, 58 (2d Cir. 2018) (Summary Order)).

Here, plaintiff's counsel crossed the line repeatedly in summation, to the prejudice of defendant Lieutenant Treubig and to a level that compromised the fairness of the trial and the integrity of the jury's verdict against Lieutenant Treubig.  Just looking at the damages section of the verdict form in this case, observing that the jury awarded no compensatory damages, only one quarter in nominal damages (and only upon prompting), and thirty thousand dollars in punitive damages against one defendant, one would likely wonder, what happened to produce such an unusual result? It is likely that, upon reading the jury's notes, one would start to question the jury's grasp of and/or fidelity to the Court's legal instructions. To find answers one need only look to plaintiff's counsel's improper summation, viewed in the context of the entire trial, to conclude that the jury was led astray, invited to summon their feelings about policing in general - their prejudices, passions, and their sympathies, and send a

message to society at large rather than to render a fair verdict based on the facts of this case with

respect to damages awarded against Lieutenant Treubig.

      Credibility was a core issue at this trial.  Right out of the gate, plaintiff's counsel

commenced his summation by repeatedly stating that the officer defendants "lied" to the jury.

(Ex. A, TT, 335:11-336:21). For context, in the first five paragraphs of his summation, spanning

approximately two pages of testimony, plaintiff's counsel said the defendants "lied" to the jury

*nineteen* times. (Ex. A, TT, 334:21-336:21). For example, plaintiff first attacked the credibility

of defendant P.O. Vaccaro as follows:

> Defendant Vaccaro, he **lied** when he said that plaintiff took a
> swing at him.  He **lied** when he said that he was never on top of
> plaintiff, he **lied** when he said that he remembered plaintiff being
> jabbed with the asp but can't remember who was holding it. He
> **lied** when he said that he saw plaintiff sprayed with pepper spray
> but can't remember who sprayed it, even though he's right there.
> He **lied** when he said the pepper spray had no affect on
> plaintiff….He **lied** when he said he never cursed at plaintiff. He
> **lied** when he said he heard Lieutenant Treubig give plaintiff a
> verbal warning…"

(Ex. A, TT, 335:15-336:3).  Plaintiff used this same improper template to

improperly denigrate Officer Muniz and UC 349, and began to do so to Lieutenant Treubig when

the Court rightly intervened. (Ex. A, TT, 336:22 – 22).  While an attorney has latitude to use the

word lies during a summation when credibility is at issue, they cannot due so in a manner that is

excessive and inflammatory. See United States v. Clark, 593 F. App'x 53, 55 (2d Cir. 2014)

("[u]se of the words 'liar' and 'lie' to characterize disputed testimony when the witness's

credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to

be inflammatory"); accord Crockett v. City of N.Y., 720 F. App'x 85, 87 (2d Cir. 2018); see also

Fineman v. Armstrong World Indus., 980 F.2d 171, 207 (3d Cir. 1992) (granting a new trial

when counsel repeatedly called defendants' witnesses "liars" and "perjurers" during summation).

Plaintiff's repeated use of the word lie was excessive and inflammatory, as evidenced by the fact that the Court *sua sponte* called a sidebar and instructed plaintiff's counsel to modify his language. (Ex. A, TT, 336:22-21). The Court also instructed the jury that the particular word lie was disfavored. (Ex. A, TT, 338: 2-5 "I just had a brief discussion because "lie" is a jaded [likely erroneous recording of the word freighted] word and there's a preference not to use that word. There are many other ways to express the concept.) However, this did not cure the prejudice for two reasons. First, by framing the issue as one of semantics, counsel for plaintiff was essentially able to use synonyms in the same repetitive fashion, essentially winking at the jury through word play. For example, immediately after the Court's instruction counsel said: "Defendants have been *less than honest with* you. They have been *less than fully frank*. *They haven't told you the truth* about what happened and what they did." (Ex. A,TT, 338:7-9). In addition, plaintiff's counsel ignored the Court's admonition and reverted to using the term lies during summation, garnering a sustained objection and stricken, but of course heard and absorbed, argument. (Ex. A,TT, 347:1-3).

Plaintiff's counsel compounded the error by personally vouching for the evidence. (Ex. A, TT, 349:21-24; 342:14-16 ("I don't think you should accept that. I don't think it's right. I don't think it's normal.")). There is no question that such commentary is improper conduct for any attorney. See Marcic v. Reinauer Transp. Cos., 397 F.3d 120, 126 (2d Cir. 2005) (deeming statements by counsel about what he personally believed and his judgment regarding the case was improper and "hardly commendable"). Plaintiff's counsel further compounded the prejudice by tying his improper remarks about credibility to assertions that were not supported by evidence. For example, in summation, plaintiff's counsel argued, once again vouching in the process:

I posit to you right now that anyone who takes a swing at a police officer is going to be charged with assault on an officer. I'd even bet it'd be the top charge. It's a felony crime to take a swing at an officer with a set of handcuffs attached to your wrist. It's definitely a felony crime.

There was no testimony adduced at trial to support these proclamations. (See Ex. B, TT, at 187:3 - 188:23). Rather, plaintiff's counsel used his summation to act as a witness and, worse, to act as though his own improper testimony could be relied upon to discredit defendants.

Plaintiff's counsel worsened matters still more by specifically tying his request for punitive damages to his own improper pronouncements about defendants' alleged "lies." (Ex. A, TT, 346:13-347:6 (i.e., 347:5-6 "And if you conclude that these officers were less than honest with you, then you should award punitive damages.")). Counsel for plaintiff's invitation to award punitive damages for alleged dishonesty during trial did not comport with the Court's instruction on punitive damages, and, of course, that is because it is not consistent with the law in this jurisdiction. Punitive damages should reflect conduct relating to the harm caused to the plaintiff, and should be reflective of the claims that were at issue during the trial. See Philip Morris USA v. Williams, 549 U.S. 346, 354 (2007). The conduct at issue in this trial was the decision to use specific levels of physical force. As such, punitive damages assessed must relate to those decisions, not post-hoc allegations of dishonesty on the witness stand.[1] See Collado v. City of

_____

[1]In addition, allowing an award of punitive damages based on discredited trial testimony would be particularly misplaced here because the jury's verdict and answers to special interrogatories show that they credited Lieutenant Treubig's testimony but, nonetheless, found that he was wrong to conclude that plaintiff was resisting arrest when he used a second taser cycle. That

N.Y., 396 F. Supp. 3d 265, 281 (S.D.N.Y. 2019) (The Honorable Denny Chin, sitting as trial judge by designation, vacated the jury's award of $10 million in punitive damages after a lethal force case, finding the damages unsupported by the evidence in a case where plaintiff's counsel argued in summation that the defendant officer used lethal force because he panicked, and then lied about the facts during trial).

Finally, further compounding the matter in the most egregious way, plaintiff's counsel blatantly appealed to the jury's sympathies, passions, and prejudices and, specifically, invited the jury to view their role as jurors as messengers for delivering broader social responses to police officers at large – appealing to national and local discourse and unrest rather than the facts of this case and the particular parties in question. Examples of this tactic permeate plaintiff's summation. To name a few, plaintiff's counsel told the jurors that, if they accepted the defendants' testimony, "you've got to think that this man is a second class citizen. That because of how he looks, where he is from, he doesn't have the same rights as the rest of us." (Ex. A, TT, 342: 18-21). Plaintiff's counsel embraced and directly appealed to an "us" versus them prejudice regarding police encounters in general. For example, he broadly suggested that all police officers are dishonest. (Ex. A, TT, 341: 3-7 ("This is contrived testimony. It's the kind of testimony that officers put forth when they don't want a jury to really know the truth, when 2010 they want a jury to just accept their version of events because they're officers, because they're entitled.). In addition, plaintiff's counsel further appealed to both broader allegations against police officers at large and racial concerns when he asked the jury "why does

---

finding does not translate to a finding of dishonesty but, rather, at worst, an unreasonable judgment call made under tense circumstances.

it seem like these kinds of things only happen in places like East Harlem?" (Ex. A, TT, 344:25-345:4). Almost immediately after this plaintiff's counsel again appealed to broader social issues and told the jury that they had "a civic duty as citizens to hold these officers accountable." (Ex. A, TT, 345:10-12). Even following instruction by the Court that the jury would be given legal instructions, plaintiff's counsel doubled down on his rhetoric, stating:

> If you find that defendant officers used excessive force you have a civic duty to hold them responsible. As citizens we have to be willing to hold officers responsible when they violate the rights of our fellow citizens, no matter who those fellow citizens may be. And it's often in situations like this that we're called upon to stand up for the rights of the people who we otherwise would not know...

(Ex. A, TT, 345:19-25). Plaintiff's counsel even went so far as to state, "[i]f it's ok for them to do what they did to Matthew Jones, it's ok for them to do what they did to you or I." (Ex. A, TT, 341: 9-10). Counsel's constant appeals to prejudice and to embrace the jury in an us versus them forum on policing were tactical and egregious. Defense counsel raised objections and concerns about counsel for plaintiff's tactics immediately after summations. (Ex. A, TT, 348:15-351:8). Once deliberations started, the jury quickly submitted a note confirming that defendant's objections to plaintiff's summation were well founded. Note One inquired, "If we answer "no" for a defendant in Question One, [Liability] can we still answer "yes" for Question Four, punitive? We are worried that a "no" in Question One ignores responsibility in the rest of the document." (Ex. D, TT, 390:1-4). Defense counsel reiterated defendant's position. (Ex. D, TT, 391:2-394:11). In particular, defense counsel noted:

> The concern here is exactly the concern that we raised after summation which is that if one wants to answer no then obviously, there's a feeling that the burden hasn't been met and plaintiff hasn't proven their case. It is clear from the instructions that the deliberations should end there but if they are continuing it is because they have been tasked with taking responsibility for broader social concerns outside of the evidence in this case.

(Ex. D,TT, 391:5-12).  If there was any question at all about whether the jury was torn by counsel for plaintiff's invitation to make a statement broader than a verdict based exclusively on the particular parties and particular facts of this case, it was answered when the jury sent out a note explicitly asking "Are we allowed to make a statement to the Court in addition to our verdict?" (Ex. D, TT, 397: 14-18.).

The jury's notes and verdict make clear that the net result of counsel for plaintiff's improper conduct is that Lieutenant Treubig was denied a fair trial and, saddled with a judgment of $30,000.25, is personally carrying the weight of the jury's message against police in general. This is an unjust result that cannot stand.  As such, defendant respectfully submits that the Court should order a new trial.

## POINT II

### THE JURY'S PUNITIVE DAMAGE AWARD MUST BE SET ASIDE AS UNSUPPORTED BY THE RECORD AND THE LAW, OR, REMITTED

The jury in this case awarded $30,000 in punitive damages against Lieutenant Treubig and 25 cents in nominal damages.  The punitive damages awarded are not supported by the record and are not permissible under the law.   As stated in Point I, they are indicative of the prejudice caused by plaintiff's counsel's improper summation, are intrinsically excessive, and should "shock the judicial conscience" of this Court.  Therefore, the award of punitive damages should be vacated or, at a minimum, substantially reduced.

It is well established that there are procedural and substantive constitutional limitations on punitive damage awards arising out of the Due Process Clause of the Fourteenth Amendment.  See, e.g. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003);

Philip Morris USA v. Williams, 549 U.S. 346, 352 ("Unless a State insists upon proper standards that will cabin the jury's discretionary authority, its punitive damages system may… threaten 'arbitrary punishments,' i.e., punishments that reflect not an 'application of law' but 'a decisionmaker's caprice.'").  Courts reviewing punitive damages awards must consider (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. Id. at * 418 (quoting BMW of N. Am. V. Gore, 517 U.S. 559, 575 (1996). "It should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." Id. at *417.

"In this Circuit, the burden is normally on the plaintiff to prove each element of a § 1983 claim, including those elements relating to damages." Miner v. City of Glens Falls, 999 F.2d 655, 660 (2d Cir. 1993); Razzano v. Cty. of Nassau, No. CV 07-3983 (ADS) (AKT), 2012 U.S. Dist. LEXIS 40346, at *11-15 (E.D.N.Y. Feb. 27, 2012) (quoting Patrolmen's Benevolent Ass'n of the City of the City of N.Y. v. City of N.Y., 310 F.3d 43, 56 (2d Cir. 2002)).  "The law does not countenance unsupported verdicts explicable only in the sympathy of the jury for the plaintiff." Figueroa v. Mazza, 59 F. Supp. 3d 481, 485 (E.D.N.Y. 2014).  "[A]n award of damages must be supported by competent evidence concerning the injury." Carey v. Piphus, 435 U.S. 247, 264 n.20 (1978).

Here, while plaintiff attacked the wisdom of using a taser to subdue plaintiff, plaintiff did not elicit any evidence from Lieutenant Treubig or any other witnesses, including

plaintiff himself, that Lieutenant Treubig's use of the taser was prompted by malice or any ill will or spite towards plaintiff or his rights.  Plaintiff elicited that, despite having responded to many circumstances involving resisting arrestees, this was the first and last time that Lieutenant Treubig had ever used the taser.  (Ex. C, TT, 279:2-9).  Plaintiff also elicited that one reason that Lieutenant Treubig chose to use a taser was to ensure plaintiff's safety as well as the safety of the other officers.  (Ex. C, TT, 258:1-4).  None of this supports a finding of malice.  To the contrary, the jury's responses to the special interrogatories make clear that Lieutenant Treubig used a second taser cycle based on his mistaken belief that plaintiff was continuing to resist arrest.  Indeed, this Court determined that such a belief was reasonable and granted Lieutenant Treubig qualified immunity.  Jones v. Muniz, 349 F. Supp. 3d 377, 391 (S.D.N.Y. 2018) reversed and remanded by Jones v. Treubig, 963 F.3d 214 (2d Cir. 2020).  In reversing the grant of qualified immunity, the Court of Appeals did not determine that, accepting the facts as put forth in the Court's decision, qualified immunity was not warranted.  Rather, the Court of Appeals found that defendant should have asked more clarifying questions of the jury in order to prove his entitlement to the affirmative defense.  Jones v. Treubig, 963 F.3d 214, 228 (2d Cir. 2020) ("A mistake of fact, however, in the absence of an additional jury finding that the mistake was reasonable (when there are disputed material facts on that question) is insufficient to support an officer's claim that he is entitled to qualified immunity, and no such finding of reasonableness was made by the jury here.").  The Court of Appeals explained that, "in the absence of more detailed findings by the jury, we conclude that this mistaken belief does not shield Lt. Treubig from liability because the evidence in the record, when construed most favorably to Jones, would have allowed the jury to rationally find that Lt. Treubig's subjective belief regarding ongoing resistance at the time of the second tasing was unreasonable." Id., at 230.  In light of the Court of

14

Appeals's decision, defendants acknowledge that the record allows for the possibility that the jury may have found this mistake unreasonable. Arguably unreasonable in light of unanswered questions – however, is a far cry from - conduct so malicious and wanton that it warrants punitive damages. There is simply no evidence in the record from which one could infer the malicious or wanton intent necessary to sustain punitive damages.  As such, the award of punitive damages should be vacated. Collado v. City of N.Y., 396 F. Supp. 3d 265, 281 (S.D.N.Y. 2019) (The Honorable Denny Chin, sitting as trial judge by designation, upheld the jury's finding of liability in a fatal shooting excessive force case but vacated the jury's award of $10 million in punitive damages because there was no evidence adduced of malice or wantonness); Coleman v. Siedel, 533 F. Supp. 593, 599 (D. Conn. 1980) (vacating an award of punitive damages and noting "[n]owhere in the plaintiff counsel's summation did he argue or claim that Officer Siedel had acted with malice or that his actions were carried out with prejudice, ill-will, with spite or grudge.").

Most troubling in this case is that, based upon their notes and the absence of evidence supporting punitive damages, it appears that the jury found liability *in order to* award punitive damages rather than based on plaintiff satisfying his burden of proof.  This is made most evident by the jury's decision not to award any compensatory damages despite the fact that plaintiff offered evidence that the jury could have relied upon to do so and the Court instructed the jury to that end, paired with the jury's deliberate decision not to award nominal damages either.  The Court acknowledged that the jury's failure to award compensatory or nominal damages while awarding punitive damages was inconsistent with the Court's instructions. (Ex. E, TT, 410, 2-6 (The Court: "Ladies and gentlemen, the reason that I consulted with the lawyers is there is one answer on the special verdict form which on its face doesn't appear to follow the

instructions that I gave you with respect to nominal damages."). To remedy that, the Court instructed the jury to award nominal damages, and indeed the only reason that the jury reluctantly awarded a quarter in nominal damages is because the Court instructed them to. Respectfully, the Court did not acknowledge that the jury's decision not to award any compensatory or nominal damages was a clear signal that the jury determined that plaintiff failed to prove that an individual defendant actually caused a violation of his constitutional rights. At that time, defendant had requested that the jury be given a repeated instruction on all damages to clarify the inconsistency in its verdict and pointed out that the jury's failure to follow the instructions was likely not the result of misunderstanding but, rather, an attempt to make a statement. (Ex. E, TT, 409:13-18 ("But, Your Honor, just to make our position clear, I think what they're doing here is saying that there is no harm that he did not prove injury and I think that's what their damages answer means and I think that the punitive answer meaning [sic], notwithstanding that, we want to send a message to punish.")[2] This calls into question the legitimacy of the jury's award to such an extent that vacatur is appropriate.

Additional considerations also support vacating the jury's award of punitive damages. Here, as noted, Lieutenant Treubig's decision to use the taser was not reprehensible. More telling however, is the disparity between the jury's reluctant award of 25 cents in nominal damages and $30,000 in punitive damages. This represents a ratio of 120:1. This exceeds the upper bounds of ratios that courts have found acceptable when comparing the ratio of compensatory damages, which this jury declined to award at all, to punitive damages. "Generally, Gore marks a ten-to-one ratio as the due process ceiling of punitive to compensatory damages, while rejecting a categorical or formulaic approach." Jennings v. Yurkiw, No. 14-CV-

---

[2] See also, (Ex. E, TT, at 416:20-418:23).

6377 (SMG), 2018 U.S. Dist. LEXIS 186602, at *50 (E.D.N.Y. Oct. 31, 2018) (citing BMW of N. Am. V. Gore, 517 U.S. 559, 581-83 (1996)). "The Second Circuit, nonetheless, has been hesitant to approve a punitive award approaching even a five-to-one ratio." Id.; See also Fisher v. Mermaid Manor Home for Adults, LLC, No. 14-CV-3461 (WFK)(JO), 2016 U.S. Dist. LEXIS 174364, at *19 (E.D.N.Y. Dec. 16, 2016) ("Upon review of the cases in the Second Circuit, the jury's award of a ten-to-one punitive damages ratio shocks the judicial conscious."). Under the circumstances presented in this case, considering the trial in its entirety, plaintiff's improper summation, and the jury's unusual and disproportionate verdict, defendants respectfully submit that the Court should vacate the jury's award of punitive damages or, at a minimum, remit the excessive amount.

### <u>CONCLUSION</u>

For the foregoing reasons, defendant Lieutenant Treubig respectfully requests that the Court grant his application for a new trial or vacate or remit the jury's award of punitive damages against him, and grant such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            September 4, 2020

JAMES E. JOHNSON
Corporation Counsel of the City of New York
*Attorney for Defendant Treubig*
100 Church Street, 3rd Floor
New York, New York 10007
(212) 356-2425

By:    /s/ *Melanie Speight*
       Melanie Speight
       *Senior Counsel*

17

CC:    <u>VIA ECF</u>
        Alexis Padilla
        David Zelman
        Amir Ali
        *Plaintiff's Counsel*