**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------------

MATTHEW JONES,

                          Plaintiff,                         16 **CIVIL** 8080 (JGK)

      -against-

CITY OF NEW YORK, et al.,

                          Defendants.

------------------------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S APPLICATION FOR ATTORNEY'S FEES AND COSTS

Amir H. Ali
*Admitted Pro Hac Vice*
RODERICK & SOLANGE MACARTHUR
  JUSTICE CENTER
501 H Street NE, Suite 275
Washington, DC 20002
(202) 869-3434
amir.ali@macarthurjustice.org

Alexis G. Padilla
290 Howard Avenue
Brooklyn, NY 11233
(917) 238-2993
alexpadilla722@gmail.com

David A. Zelman
612 Eastern Parkway
Brooklyn, NY 11225
(718) 604-3072
dzelman@civrtslaw.com

*Attorneys for Plaintiff Matthew Jones*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

CERTIFICATION OF COMPLIANCE WITH INDIVIDUAL PRACTICE RULE II.D............. v

PRELIMINARY STATEMENT ..................................................................................... 1

   I.   TRIAL PROCEEDINGS ................................................................. 2

   II.   APPELLATE PROCEEDINGS................................................................. 4

   III.   PROCEEDINGS ON REMAND. ................................................................. 7

ARGUMENT ................................................................................................................ 8

   I.   Mr. Jones Is Entitled The Attorney's Fees Reasonably Expended In Litigating This Case Through Discovery, Trial, Post-Trial Motions, And Appeal. ........................ 8

   II.   Plaintiff Has Proposed Presumptively Reasonable Fees Based On The Relevant Factors. ................................................................................................ 10

      A.   Counsel's Hourly Rates Are Reasonable. ............................................... 10

      B.   Counsel's Hours Were Reasonably Expended. ...................................... 17

   III.   An Upward Adjustment Is Appropriate Given The Particular Circumstances Of This Case. .......................................................................................... 20

   IV.   Mr. Jones Is Entitled To An Award Of Costs............................................... 22

   V.   Mr. Jones Is Entitled To Fees For The Time Spent Related To This Motion And Any More Post-Judgment Motions. ............................................................... 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507 (S.D.N.Y. 2010)................................16

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
    522 F.3d 812 (2d. Cir. 2008).....................................................................10, 11, 16, 21

*Asare v. Change Grp. of N.Y., Inc.*,
    No. 12-CIV-3371, 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ....................................14, 16

*Bailey v. Pataki*, No. 08-cv-8563, 2016 WL 3545941 (S.D.N.Y. June 16, 2016).............14, 15, 16

*Barbour v. City of White Plains*, 788 F. Supp. 2d 216 (S.D.N.Y. 2011)......................................16

*Blum v. Stenson*, 465 U.S. 886 (1984) ............................................................................................5

*Brady v. Wal-Mart Stores, Inc.*,
    No. 03-CV-3843 (JO), 2010 WL 4392566 (E.D.N.Y. Oct. 29, 2010).........................................19

*Burr v. Sobol*, 748 F. Supp. 97 (S.D.N.Y. 1990) .........................................................................17

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)....................................................17

*Demonchaux v. Unitedhealthcare Oxford*,
    No. 10-CIV-4491, 2014 WL 1273772 (S.D.N.Y. Mar. 27, 2014)....................................15, 16

*Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511 (S.D.N.Y. 2015) ....................................10

*Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204 (2d Cir. 2005) ................................................9, 21

*Farrar v. Hobby*, 506 U.S. 103 (1992) ...........................................................................................9

*Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381 (S.D.N.Y. 2000) .............................17

*Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992)........................................................................10, 20

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...........................................................................17, 20

*Hines v. City of Albany*, 862 F.3d 215 (2d Cir. 2017) .............................................................9, 23

*Jamison v. McClendon*,
    No. 3:16-CV-595-CWR-LRA, 2020 WL 4497723 (S.D. Miss. Aug. 4, 2020)......................22

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ...................................11, 21

*Jones v. City of Martinsburg, W. Va.*, 961 F.3d 661 (4th Cir. 2020)............................................22

*Jones v. Treubig*, 963 F.3d 214 (2d Cir. 2020) ......................................................................2, 6, 7

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998)..........................................10, 20, 22

*Lilly v. City of N.Y.*, 934 F.3d 222 (2d Cir. 2019)..............................................................8, 10, 11

*Medina v. Buther*, No. 15-cv-1955, 2019 WL 4370239 (S.D.N.Y. Sept. 12, 2019) ..............15, 19

*Middleton v. Green Cycle Hous., Inc.*,
    No. 15mc0023, 2017 WL 715747 (S.D.N.Y. Feb. 23, 2017) ................................................18

*Missouri v. Jenkins*, 491 U.S. 274 (1989).....................................................................................10

*N.Y. State Nat. Org. for Women v. Terry*, 159 F.3d 86 (2d Cir. 1998) ...........................................9

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986) ...................20

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) ................................................................20

*Perez v. Westchester Cty. Dep't of Corr.*,
  No. 05 Civ. 10462 (RMB), 2010 WL 11629548 (S.D.N.Y. June 21, 2010) ..........................19

*Pino v. Locascio*, 101 F.3d 235 (2d Cir. 1996)..................................................................20

*Robinson v. City of N.Y.*, 2009 WL 3109846 (S.D.N.Y. Sep. 29, 2009) .................................16, 17

*Rodriguez v. Pressler & Pressler, L.L.P.*,
  No. CV-06-5103, 2009 WL 689056 (E.D.N.Y. Mar. 16, 2009).............................................16

*Rozell v. Ross-Holst*, 576 F. Supp. 2d 527 (S.D.N.Y. 2008) .............................................10, 15, 16

*Salazar v. District of Columbia*, 30 F. Supp. 3d 47 (D.D.C. 2014)............................................16

*Seigal v. Merrick*, 619 F.2d 160 (2d Cir. 1980)..................................................................17

*Tatum v. City of N.Y.*,
  No. 06-cv-4290, 2010 WL 334975 (S.D.N.Y. Jan. 28, 2010) .....................................15, 17, 18

*U.S. Football League v. Nat'l Football League*, 704 F. Supp. 474 (S.D.N.Y. 1989)....................17

*Weyant v. Okst*, 198 F.3d 311 (2d Cir. 1999) ...........................................................9, 23

## Statutes

42 U.S.C. §1983.................................................................................................2

42 U.S.C. §1988(b) .........................................................................................2, 8

## Other Authorities

Hailey Fuchs, *Qualified Immunity Protection for Police Emerges as Flash Point
  Amid Protests*, N.Y. TIMES, June 23, 2020 ......................................................22

S. REP. NO. 94–1011 (1976) ...........................................................................9, 21

U.S. Courts, *U.S. Courts of Appeals – Judicial Caseload Profile* (June 30, 2020).........................7

**<u>CERTIFICATION OF COMPLIANCE WITH INDIVIDUAL PRACTICE RULE II.D</u>**

I certify that this Memorandum of Law contains 6,989 words and comports with Rule

II.D of your Honor's Individual Practices dated May 28, 2020.

Dated: Washington, D.C.                Respectfully Submitted,
      September 7, 2020             ____/s/ Amir H. Ali_____

Amir H. Ali
*Admitted Pro Hac Vice*
Roderick & Solange MacArthur
  Justice Center
501 H Street NE, Suite 275
Washington, DC 20002
(202) 869-3434
amir.ali@macarthurjustice.org

Alexis G. Padilla
290 Howard Avenue
Brooklyn, NY 11233
(917) 238-2993
alexpadilla722@gmail.com

David A. Zelman
612 Eastern Parkway
Brooklyn, NY 11225
(718) 604-3072
dzelman@civrtslaw.com

*Attorneys for Plaintiff Matthew Jones*

v

## PRELIMINARY STATEMENT

This fee application follows four years of litigation through depositions, trial, post-trial motions, and appeal, which culminated in a verdict and judgment in favor of Plaintiff Matthew Jones, finding that his constitutional rights were violated and that the violation was malicious and wanton so as to necessitate punitive damages. At every stage, Mr. Jones proposed settlement to the City. This included a pre-trial offer to settle for less than the ultimate jury award (which would have obviated the need for trial) and a post-trial offer equal to the jury's award (which would have obviated the need for appellate proceedings). Each time, the City responded that this case was a "No Pay"—it would not entertain settlement and would litigate to the end. Even today, after ver-dict, appeal and judgment, the City promises a "long road ahead," ECF No. 130 at 1, and did not respond to Mr. Jones's settlement offer for fees (which could have obviated the need for this ap-plication). Blanket refusal to entertain settlement and to vigorously litigate every step is, of course, the City's prerogative. But federal civil rights law now requires it to pay the fees and costs reason-ably expended to litigate this matter.

On all traditional measures, this was an unattractive lawsuit. The incident occurred during a drug-related arrest. The plaintiff was a convicted felon and when he sought counsel was in pre-trial custody facing charges on another drug-related felony. On top of that, the ordinary financial incentives were absent: Mr. Jones did not suffer severe and permanent injuries from which one could expect a significant compensatory damage award. Come time to appeal—even given the possibility of fees—no private attorneys would take the case in light of the complexity and poor odds of success and a national not-for-profit had to step in to fill the gap. Declaration of Amir H. Ali ("Ali Decl.") ¶¶ 4, 11-13; Declaration of David Zelman ("Zelman Decl.") ¶ 6. Otherwise, the appeal likely never would have been litigated, and Mr. Jones's civil rights would not have been

vindicated. Zelman Decl. ¶ 6; Declaration of Ian Heath Gershengorn ("Gershengorn Decl.") ¶ 11. As the former Acting Solicitor General of the United States, who oversaw excessive force and qualified immunity cases for the United States government, describes: "it is critical to the account-ability of government and the vindication of civil rights that cases and appeals of this nature be zealously litigated even when other financial incentives, such as a large damage award, are not present." Gershengorn Decl. ¶ 11.

Having completed trial and appeal, this Court has entered final judgment in favor of Mr. Jones, reinstating the jury's verdict of excessive force and its nominal and punitive damage awards. Pursuant to 42 U.S.C. § 1988(b), Mr. Jones seeks the fees and costs reasonably incurred through discovery, trial, post-trial motions, and appeal. Moreover, as described herein, an upward adjust-ment of these fees is appropriate given the degree of success for Mr. Jones and the particular cir-cumstances of this case.[1]

## I.      TRIAL PROCEEDINGS

Plaintiff Matthew Jones brought this civil rights action under 42 U.S.C. § 1983 alleging violation of his constitutional rights during an arrest in an East Harlem apartment building on April 7, 2015. According to Mr. Jones, upon questioning the basis for his arrest, officers responded with an escalating battery of force, culminating with the deployment of taser prongs into Mr. Jones's back and twice cycling it through his body. *See Jones v. Treubig*, 963 F.3d 214, 220-21 (2d Cir. 2020).

---

[1] Mr. Jones also reserves the right to seek fees for this fee application and any additional motions the City chooses to file. *See infra* Part IV.

Attorney Alexis G. Padilla represented Mr. Jones from pleadings to verdict. When Mr. Jones approached Mr. Padilla about bringing suit, Mr. Jones was in the custody of the New York City Department of Corrections, facing state charges in an unrelated matter. Declaration of Alexis G. Padilla ("Padilla Decl.") ¶ 3. Mr. Padilla filed an initial complaint alleging excessive force and false arrest against the officers present (many who were then unknown), and municipal liability for the same incident. *Id.* ¶ 4.

After the City answered, Mr. Padilla contacted the City to discuss possible settlement and offered to settle for $20,000, which included attorney's fees. *Id.* ¶ 5. Counsel for the City said she would relay the offer, but that her clients were likely not open to settlement. *Id.* ¶ 6. Several months later, the City informed Mr. Padilla it had designated Mr. Jones's case a "No Pay" and would not entertain settlement. The City asked to forgo mandatory mediation and to proceed to trial. *Id.* ¶ 8.

As the City disclosed the officers involved, Mr. Padilla amended the complaint to name them. Each time, Mr. Padilla also voluntarily narrowed the case to expedite discovery and trial. For instance, in the First Amended Complaint, Mr. Padilla removed the related municipal liability claim. *Id.* ¶ 9. In the Second Amended Complaint, Mr. Padilla removed the claim of false arrest arising from the same encounter. *Id.* ¶ 11. These decisions were made to avoid costly and time-consuming motion practice, and to expedite trial on Plaintiff's excessive force claim. *Id.*

Notwithstanding the paired down complaint and relatively small demand, the City continued to refuse settlement negotiations. *Id.* ¶ 12. Mr. Padilla accordingly proceeded to discovery, deposing the four identified officers present. *Id.* ¶ 13. Mr. Padilla also defended depositions of Mr. Jones and his girlfriend. *Id.* Mr. Padilla's narrowing of the claims successfully avoided a summary judgment motion from the City. *Id.* ¶ 14.

Consistent with its earlier positions, the City did not make any Rule 68 offer and proceeded to trial. *Id.* Mr. Padilla conducted motions in limine; opening statements; examination of five witnesses; jury instructions; and closing statements. *Id.* ¶ 15. The jury's verdict found that Lieutenant Christopher Treubig violated used constitutionally excessive force against Mr. Jones. It awarded nominal damages, as required to support its verdict. It additionally found that Lieutenant Treubig inflicted the force maliciously and wantonly, awarding punitive damages of $30,000.

The City thereafter asked to submit supplemental interrogatories and to defer judgment pending post-trial motions. It filed a written motion for judgment as a matter of law, arguing that Lieutenant Treubig was entitled to qualified immunity. At this time, Attorney David A. Zelman entered a Notice of Appearance for the purpose of litigating the post-trial motion, and took the lead in Mr. Jones's post-trial pleadings and argument. Zelman Decl. ¶¶ 5-6.

On November 21, 2018, the Court granted judgment to Lieutenant Treubig based on qualified immunity.

## II.    APPELLATE PROCEEDINGS.

After this Court's decision, Mr. Padilla and Mr. Zelman actively sought out experienced appellate attorneys. None would take the case absent a sizable retainer given the unlikely odds of prevailing on appeal—and Mr. Jones could not have paid in any event. *Id*. ¶ 6; Padilla Decl. ¶ 23. Given the time, cost and likely futility of appealing qualified immunity, Mr. Padilla and Mr. Zelman considered advising Mr. Jones to forgo appeal or proceed *pro se*. Padilla Decl. ¶ 24; Zelman Decl. ¶ 6.

In November 2018, Attorney Amir H. Ali, Director of the not-for-profit MacArthur Justice Center's Washington, D.C. office and Deputy Director of its Supreme Court & Appellate Program agreed to represent Mr. Jones on appeal despite the cost and risk. The MacArthur Justice Center

proceeded without any charge or contingency, given the risk Mr. Jones's appeal would be forfeited and the important rights at stake. Ali Decl. ¶ 4, 11-13.[2]

Shortly after Mr. Jones appealed, the Court of Appeals ordered mediation. *Id.* ¶ 14. The City informed the assigned mediator that the City was uninterested in settlement discussions. *Id.* ¶ 15. The City said it wished "to request the cancellation of the mediation" because "this is a 'no-pay' case." *Id.* It stated: "I have confirmed that this remains the City's position, and I do not foresee that this position will change." *Id.* The mediator denied the City's request and required mediation. *Id.* ¶ 16. Mr. Jones offered to settle for an amount equal to the jury's verdict, $30,000.25, exclusive of attorney's fees. *Id.* The City did not respond to the settlement offer. *Id.*

The appeal implicated several legal issues of considerable complexity, including the constitutional standards governing excessive force, the law governing use of a taser and other substantial force, the doctrine of qualified immunity, the law governing supplemental interrogatories, and the Sixth Amendment right to a jury. *Id.* ¶ 16-18; Gershengorn Decl. ¶ 6. Given the onerous legal standard for qualified immunity, each ground for appeal required a comprehensive canvass and analysis of caselaw, to show that particularized facts in prior decisions and/or a consensus of particularized cases from other jurisdictions clearly established the law. Gershengorn Decl. ¶ 7. Mr. Ali accordingly filed a 55-page opening brief providing an in-depth analysis of cases across all circuits. Ali Decl. ¶ 21.

---

[2] The Supreme Court has been clear that "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization." *Blum v. Stenson*, 465 U.S. 886, 894 (1984).

The City filed a 48-page response brief. It did not defend this Court's basis for granting qualified immunity, which reasoned that Mr. Jones was "pushing himself off the ground" during the second tasing. *Id.* ¶ 22 (quoting *Jones*, 963 F.3d at 229). The City instead defended immunity on the alternative basis that "the uncontroverted evidence still demonstrated that Jones continued to resist arrest at the time of the second tasing." *Id*. This was premised on a novel account of the testimony, and on dozens of cases that the City cited for the first time. *Id*. Like Mr. Jones, the City advanced a comprehensive canvass of cases across all circuits. *Id*. ¶ 23. The City also raised multiple novel arguments to broadly expand qualified immunity. *See id*. ¶ 24 (describing novel issues raised in answer brief).

Mr. Ali's reply accordingly required substantial new research and analysis. *Id.* ¶ 25. This included a complete and precise account of the trial evidence to show that the City had disregarded the standard of review and had in some instances referred to facts that were not anywhere in the record. *Id.* ¶ 26. Mr. Ali accordingly filed a maximum-length reply of 26 pages. *Id*.

In accordance with customary practice for an appeal of this complexity, Mr. Ali dedicated substantial time to preparing for oral argument and participated in two moots. *Id*. ¶ 27; Gershengorn Decl. ¶ 9. Each moot included experienced appellate practitioners who reviewed the briefs and questioned Mr. Ali, followed by feedback. Ali Decl. ¶ 27; Gershengorn Decl. ¶ 5.

On December 11, 2019, Mr. Ali presented oral argument to a three-judge panel. Consistent with the appeal's complexity, argument lasted nearly twice the scheduled duration. Ali Decl. ¶¶ 29-30.

On June 26, 2020, the Court of Appeals issued a 57-page precedential opinion in favor of Mr. Jones. The opinion relied on the deep authority in Mr. Jones's briefs, twice collecting cases and explaining that its decision "was reinforced by a compelling consensus of cases." *Jones*, 963

F.3d at 236; *see also id.* at 239 ("[W]e again note the additional warning provided by the over-whelming persuasive authority in other circuits[.]"). The panel emphasized the specificity of those cases, involving "the use of a taser, even where a formerly resisting suspect had not yet been handcuffed" and "additional tasing(s) in a rapidly evolving situation." *Id.* at 236, 239. And it re-jected the City's novel arguments to expand qualified immunity. *See id.* at 236 n.13 (rejecting the City's "object[ion] to reliance on cases outside this Circuit for purposes of the qualified immun-ity"); *id.* at 238 (holding that decisional law published after the incident applies); *id.* at 239 (con-cluding courts have "consistently reached the same conclusion with respect to the use of a taser, even where a formerly resisting suspect had not yet been handcuffed"); Ali Decl. ¶ 24.[3]

## III.    PROCEEDINGS ON REMAND.

On remand, this Court ordered the parties to confer regarding a joint proposed judgment. ECF No. 126. Mr. Ali exchanged two-dozen emails with the City in attempt to reach a joint pro-posed judgment. Ali Decl. ¶ 37-38. Although Mr. Ali adopted several of the City's revisions and the City confirmed the accuracy of the proposed joint judgment, the City later informed plaintiff's counsel that it would not join any judgment that reflected the jury's award of nominal and punitive damages, requiring the preparation of separate letters and a hearing. *Id.* The day after the hearing, the Court adopted Mr. Jones's proposed judgment. ECF No. 135.

Over one month ago, Plaintiff offered to settle attorney's fees for a reduced amount; the City never responded to the offer, necessitating this application. Ali Decl. ¶¶ 40.

---

[3] The appeal took 50% longer to resolve than the average appeal to the Second Circuit. *See* Ad-ministrative Office of the U.S. Courts, *U.S. Courts of Appeals – Judicial Caseload Profile* at 8 (June   30,   2020),   https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_apppro-file0630.2020.pdf (noting an average time of 12.1 months).

## ARGUMENT

Following the entry of judgment in Mr. Jones' favor, he is entitled to an award of fees and costs. An accounting of fees incurred accompany this application (*see* Padilla Decl. Ex. A; Zelman Decl. Ex. A; Ali Decl. Exs. A & B), as does an accounting of the costs (*see* Padilla Decl. Ex. B; Ali Decl. Ex. C). As set forth in detail below, Mr. Jones's attorneys reasonably incurred the following fees:

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Alexis G. Padilla | 312 | $500 | $156,000 |
| David Zelman | 104.5 | $600 | $62,700 |
| Amir H. Ali | 302.2 | $525 | $158,665 |
| David Schmutzer | 36.1 | $150 | $5,415 |
| Megha Ram | 27.1 | $250 | $6,775 |
| | | | |
| | | Total Attorney Charges: | $389,555 |

As described herein, the degree of success obtained—particularly in light of its unattractive nature and the critical relation of these issues combatting systemic racism and pervasive violence in policing—warrants an upward adjustment of these fees. Mr. Jones also requests $3988.04 in costs, and reserves the right to seek further fees related to this application and any more post-judgment motions by the City.

**I.      Mr. Jones Is Entitled The Attorney's Fees Reasonably Expended In Litigating This Case Through Discovery, Trial, Post-Trial Motions, And Appeal.**

Federal civil-rights law authorizes district courts to award reasonable attorney's fees to the prevailing party in a civil rights action. 42 U.S.C. § 1988(b); *Lilly v. City of N.Y.*, 934 F.3d 222, 227 (2d Cir. 2019). The core purpose of this law is "to encourage the bringing of meritorious civil

rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204, 208 (2d Cir. 2005). As Congress put it: "If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." S. REP. NO. 94–1011, at 2 (1976).[4]

There is no question Mr. Jones is a prevailing party, having obtained a jury verdict finding that Lieutenant Treubig violated his constitutional right to be free of excessive force, been awarded $30,000.25 in nominal and punitive damages, and had judgment entered. ECF No. 135.[5] Mr. Jones is accordingly entitled "not only to the cost of obtaining a favorable judgment but also to the cost of successfully defending that judgment, whether against post-judgment motions, or against an appeal." *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) (citations omitted); *Hines v. City of Albany*, 862 F.3d 215, 223 (2d Cir. 2017) (same).

---

[4] The Second Circuit accordingly recognizes "a presumption that successful civil rights litigants should recover reasonable attorney's fees." *N.Y. State Nat. Org. for Women v. Terry*, 159 F.3d 86, 97 (2d Cir. 1998).

[5] As the Supreme Court has held, "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Farrar v. Hobby*, 506 U.S. 103, 112-14 (1992). Here, the jury found not only a constitutional violation supported by nominal damages, but imposed punitive damages.

9

## II.     Plaintiff Has Proposed Presumptively Reasonable Fees Based On The Relevant Factors.

To determine the appropriate fee award, courts first calculate the "presumptively reasonable fee." *Lilly*, 934 F.3d at 229 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 189-90 (2d Cir. 2008)). This is done by "determining a reasonable hourly rate by considering all pertinent factors . . . and then multiplying that rate by the number of hours reasonably expended. *Id*. at 230. V. Concern

There is a "strong presumption" that this presumptively reasonable fee, sometimes referred to as the "lodestar," is appropriate. *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992) (quotation marks omitted). The court may adjust it upward or downward "in extraordinary circumstances" which indicate the fee "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Lilly*, 934 F.3d at 230. The party advocating a departure from the presumptively reasonable fee bears the burden of proving it. *Grant*, 973 F.3d at 101.

### A.     Counsel's Hourly Rates Are Reasonable.

An attorney's reasonable rate is based on "the district where the district court sits," *Arbor Hill*, 522 F.3d at 190, and courts apply "current rates, rather than historical rates . . . to compensate for the delay in payment." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)). Courts in this District conducting surveys between 2000 and 2015 found that rates for experienced civil rights litigators ranged from $250 to $650. *Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511, 518 (S.D.N.Y. 2015) (collecting cases). Rates for associates "ranged from $200 to $350." *Id*. As courts have recognized, rates have been "increasing over time." *Id.*; *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (granting $600 and explaining that previous cases should "not necessarily be considered a cap" because rates "have generally increased").

10

In determining the rate, "the district court should consider, among others," the "*Johnson* factors":

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186-187 & n.3, 190 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). These factors are at a pronounced height here.

The Second Circuit's recent decision in *Lilly*, is instructive as to time and labor, novelty and difficulty, and the level of skill required, in the context of civil rights cases. There, the district court surveyed civil rights case law and found the reasonable rate for an experienced civil rights litigator was "in the low $600 per hour range." 934 F.3d at 226. The district court concluded, however, that the rate should be reduced to $450 because of "the 'duration and simplicity' of the case." *Id*. at 226-27. On appeal, the Second Circuit found "no error in the district court's reasoning." *Id*. at 231. It observed that the case "lasted less than 10 months, required no depositions, and involved no substantial motions or briefings or appearances before the district court." *Id*. at 232 (internal quotation marks omitted). The Second Circuit concluded $450 was appropriate for "simple, garden variety civil rights work." *Id*. at 231

Contrast *Lilly* with the present case. This litigation has required not months, but four years. Rather than "no depositions" and "no substantial motions or briefing or appearances," this case involved depositions by both parties, full trial, post-trial motions, a lengthy appeal, and now post-appeal hearings and motions. Moreover, this case and appeal implicated "several complex legal issues, including the constitutional standards governing excessive force, the law governing use of

11

a taser and other substantial force, the application of qualified immunity, the law governing sup-

plemental interrogatories, and the Sixth Amendment right to a jury." Gershengorn Decl. ¶ 6. These

novel issues attracted the attention and participation of national think tanks and led to issuance of

a 57-page precedential opinion by the Court of Appeals, *see* Ali Decl. ¶¶ 28, 32. The duration,

novelty and difficulty, and the level of skill required justify a fee at the top end of the range.

Other factors, including the fee arrangement, are also pronounced. Mr. Padilla agreed to

accept Mr. Jones's case without any guaranteed fee, on contingency alone. Mr. Zelman and Mr.

Ali agreed to appear in this case without any fee to the client or contingency. Absent the statutory

right to fees—*and* the willingness of a nonprofit to take the appeal when the possibility of fees

was not enough for any private attorneys—there is a substantial risk that the trial and appeal never

would have been litigated at all. *Id.* ¶ 12; Gershengorn Decl. ¶ 11; Padilla Decl. ¶ 23.

Even setting aside the lengthy proceedings, labor required, complexity, and fee structure,

each attorney here has proposed a fee justified by his or her experience, reputation, and abilities in

isolation:

***Alexis G. Padilla***. Mr. Padilla litigated this case from pleadings, through discovery and

trial, to verdict, and requests a rate of $500. Mr. Padilla graduated from law school eight years ago

and has been admitted to the New York bar since 2013. Padilla Decl. ¶ 28. He has litigated to

completion over 50 civil rights cases in the Southern and Eastern Districts. He has also represented

clients before the Second Circuit Court of Appeals. *Id.* ¶ 30.

Mr. Padilla's current practice is dedicated entirely to criminal defense and civil rights liti-

gation. He currently represents plaintiffs in over two dozen pending federal civil rights cases and

several others in the state courts. *Id.* ¶ 31. Mr. Padilla has tried twelve cases, including five federal

civil rights matters involving excessive force. *Id.* ¶ 32. Mr. Padilla's experience and role are further described in his accompanying declaration.

**David Zelman**. Mr. Zelman was chiefly responsible for post-trial motions, and requests a rate of $600. Mr. Zelman was admitted to the New York bar in 1999 and has been practicing in the civil rights field, specifically police misconduct cases, for approximately 20 years. Zelman Decl. ¶ 2. He has handled aspects of over 250 police misconduct cases and has tried or assisted in trying more than a dozen civil rights cases to verdict in federal court. *Id.* He has briefed and argued several appeals before the Second Circuit Court of Appeals and New York State Appellate Division.

Mr. Zelman was consulted during trial and formally entered an appearance to oppose the City defendant's motion for a directed verdict on qualified immunity. *Id.* ¶¶ 3-5. Mr. Zelman's arguments during post-trial motions formed the basis for the subsequent appeal to the Second Circuit. Mr. Zelman spent considerable time with appellate counsel, Mr. Ali, to discuss the proceedings below, provide relevant documentation to Mr. Ali and collaborate on the appellate arguments. *Id.* ¶ 7. Mr. Zelman's experience and role are further described in his accompanying declaration.

**Amir H. Ali.** Mr. Ali was lead and arguing counsel on the successful appeal, and requests a rate of $525. Mr. Ali is the Director of the Washington, D.C. office of the MacArthur Justice Center, and Deputy Director of the organization's Supreme Court & Appellate Program. Ali Decl. ¶ 1. He teaches a Criminal Justice Appellate Clinic at Harvard Law School, and has taught appellate and constitutional litigation at Harvard and Georgetown law schools. *Id.* ¶ 2. Mr. Ali previously worked in a national law firm's appellate practice, and clerked for the Court of Appeals for the Ninth Circuit and the Supreme Court of Canada. *Id.* ¶ 3. He graduated from Harvard Law School in 2011. *Id.*

Mr. Ali's group "bring[s] specialized expertise, which combines experience in both federal appellate and civil rights litigation." Gershengorn Decl. ¶ 10. He has been retained been retained by victims of police across the country to argue civil rights appeals concerning qualified immunity. Ali Decl. ¶ 9. He has litigated dozens of appeals, in the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits. *Id.* ¶ 7. He has also argued two civil rights cases in the U.S. Supreme Court, and prevailed in both. *Id.* ¶ 8. In cases in which Mr. Ali's group has entered on appeal, it has obtained reversal in roughly 85%, approximately ten times the national rate of reversal in federal appeals. *Id.* ¶ 6. Mr. Ali's experience and role are further described in his accompanying declaration.

Mr. Ali staffed one junior associate to assist with research. From January 2019 through September 2019, this was David Schmutzer, a 2018 graduate of UCLA Law. *Id.* ¶ 33. From September 2019 to present, this was Megha Ram, a 2018 graduate of Yale Law School and former law clerk for the U.S. District Court for the District of Connecticut. *Id*. Mr. Ali requests only $150 for Mr. Schmutzer, given he was not admitted to the bar until part way through this case, and requests $250 for Ms. Ram.

The rate sought for each attorney is reasonable, and even modest, under this Court's caselaw. As set forth above, between 2000 and 2015, the rate awarded to experienced civil rights litigators ranged from $250 to $650 and the rate for associates ranged from $200 to $350, both increasing over time. Courts have routinely awarded amounts in the $500 range to attorneys at the senior associate level. *See Bailey v. Pataki*, No. 08-cv-8563, 2016 WL 3545941, at *6 (S.D.N.Y. June 16, 2016) (awarding $550 to attorneys with 10 years of experience); *Asare v. Change Grp. of N.Y., Inc.*, No. 12-CIV-3371, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) (awarding $500 for senior associate in FLSA action); *Demonchaux v. Unitedhealthcare Oxford*, No. 10-CIV-4491,

2014 WL 1273772, at *7 (S.D.N.Y. Mar. 27, 2014) (awarding $500 for senior associate in ERISA action). Rates in the $400 range have been awarded to experience attorneys where there is a reduction for "inexperience in civil rights litigation," *Tatum v. City of N.Y.*, No. 06-cv-4290, 2010 WL 334975, at *8 n.11 (S.D.N.Y. Jan. 28, 2010) (still awarding $400 over a decade ago, to a solo practitioner in his sixth year of practice, who had tried two civil rights cases to verdict), or where an attorney had "six to seven years litigation experience" and the issues "were not legally complex," *Medina v. Buther*, No. 15-cv-1955, 2019 WL 4370239, at *8, *11 (S.D.N.Y. Sept. 12, 2019). Mr. Padilla has more years of experience and has litigated dozens of civil rights cases to completion and numerous to verdict. He is currently representing civil rights plaintiffs in 24 open cases in Southern and Eastern District courts in addition to his criminal defense practice, evidencing the demand for his services. Mr. Padilla has nonetheless proposed a fee at the low end awarded to senior-associate-level attorneys several years ago.

As an experienced civil rights and appellate attorney who litigates civil rights appeals full time before federal courts of appeals and the U.S. Supreme Court, Mr. Ali's proposed rate of $525 is also clearly reasonable. As General Gershengorn, now Chair of a national appellate practice, states: this rate is "eminently reasonable for an attorney with [Mr. Ali's] experience" and "is comparable to that of a junior attorney at most major law firms who has substantially less experience than Mr. Ali." Gershengorn Decl. ¶ 10 Mr. Ali has proposed a fee that is substantially more modest than courts have authorized in the context of Director-level attorneys with comparable reputation, expertise, and responsibilities. *See, e.g.*, *Bailey*, 2016 WL 3545941, at *6 (awarding $550 to attorneys with 10 years of experience); *Rozell*, 576 F. Supp. 2d at 546 (finding $600 "a reasonable rate for partners and counsel"); *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 225 (S.D.N.Y. 2011) (finding nearly a decade ago that an experienced civil rights attorney's "rate of $625 is

15

reasonable" and crediting evidence that this "is well within the range of hourly rates for attorneys in civil rights cases in the Southern District and Washington, D.C. area"), *aff'd*, 700 F.3d 631 (2d Cir. 2012); *Robinson v. City of N.Y.*, 2009 WL 3109846, at \*4-5 (S.D.N.Y. Sep. 29, 2009) (finding $500 a reasonable rate for a partner-level attorney based on market rates over a decade ago).[6]

Given his twenty years of experience and the relatively limited number of hours expended given in this case, Mr. Zelman's proposed rate of $600 is also reasonable. *See Bailey*, 2016 WL 3545941, at \*6 (awarding $550 to attorneys with 10 years of experience, and $600 to the attorney with more in a § 1983 action); *Demonchaux*, 2014 WL 1273772, at \*7 (awarding $600 for a partner and $500 for a senior associate in ERISA action); *Asare*, 2013 WL 6144764, at \*19 ($750 for partner, $500 for senior associate, in FLSA action); *Barbour*, 788 F. Supp. 2d at 225 (awarding $625 to experienced civil rights litigator); *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 513-14 (S.D.N.Y. 2010) ($550 for partner in civil rights litigation); *Rozell*, 576 F. Supp. 2d at 546 (over a decade ago, awarding $600 for partner in discrimination case); *Rodriguez v. Pressler & Pressler, L.L.P.*, No. CV-06-5103, 2009 WL 689056, at \*1 (E.D.N.Y. Mar. 16, 2009) (over a decade ago, awarding $450 for partner in civil rights case); *Robinson*, 2009 WL 3109846, at \*4-5 (over a decade ago, awarding $500 for partner in employment case).

---

[6] Based on years of experience alone, Mr. Ali's rate under the adjusted "Laffey" matrix applied in Washington, D.C. is $672. *See* Laffey Matrix, *available at* http://www.laffeymatrix.com/see.html; *Salazar v. District of Columbia*, 30 F. Supp. 3d 47, 51 (D.D.C. 2014), *aff'd* 809 F.3d 58 (D.C. Cir. 2015). However, the Second Circuit holds the loadstar should generally be based on "the district where the district court sits." *Arbor Hill*, 522 F.3d at 190.

16

Finally, the request of $150 and $250 for Mr. Schmutzer and Ms. Ram is consistent with caselaw. Two decades ago, the prevailing rate for attorneys "with one to three years of experience" was "$130-150." *See, e.g,*, *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (collecting cases). Ten years later, and still a decade ago, a court found that rates for an associate in civil rights cases in the Southern District "ranged from $200 to $350, with average awards increasing over time." *Tatum*, 2010 WL 334975, at *5. The rates proposed are below and at the lower end of this range.

### B.   Counsel's Hours Were Reasonably Expended.

To calculate the presumptively reasonable or lodestar amount, the rates above are applied to "the number of hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This inquiry is not intended to "result in a second major litigation" *id.* at 437, or cause district courts to "become enmeshed in a meticulous analysis of every detailed facet of the professional representation." *Seigal v. Merrick*, 619 F.2d 160, 164 n. 8 (2d Cir. 1980). Rather, "[o]nce the district court determines the reasonable hourly rates to be applied . . . it need not conduct a minute evaluation of each phase or category of counsel's work." *Id.* "It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *U.S. Football League v. Nat'l Football League*, 704 F. Supp. 474, 477 (S.D.N.Y. 1989) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 473 (2d Cir. 1974)). Instead, courts "must look 'at the big picture.'" *Tatum*, 2010 WL 334975, at *7 (quoting *Burr v. Sobol*, 748 F. Supp. 97, 100 (S.D.N.Y. 1990)).

The present case was litigated leanly. Mr. Padilla was the sole attorney who conducted discovery and litigated the trial. Mr. Zelman litigated the post-trial motions, and Mr. Ali completed the appeal with one junior associate staffed to assist with research. Moreover, the record establishes that Mr. Jones's counsel limited discovery and repeatedly sought to narrow the claims at

issue. For instance, Mr. Padilla deposed only the officers who had been identified and present during the events, including deposing two on the same day to save time and money. Mr. Jones did not rely on any expert witnesses, though he reasonably could have concerning reasonable police practices and use of Tasers. Mr. Padilla also voluntarily dropped related claims at the pleading stage, such as those for false arrest and municipal liability. Those decisions successfully avoided any motion for summary judgment on the part of the City and limited the trial and appeal to a single claim, substantially reducing the cost to arrive at this point.

To be sure, this case was hard fought at every stage and was won based on "persistence and diligence." *Middleton v. Green Cycle Hous., Inc.*, No. 15mc0023, 2017 WL 715747, at *10 (S.D.N.Y. Feb. 23, 2017). The City mounted a vigorous defense, and Mr. Padilla took and defended depositions; prepared multiple witnesses for trial; examined five witnesses; delivered opening and closing arguments; and litigated jury instructions. Even upon an adverse verdict, the City then successfully fought to have the verdict set aside on post-trial motions.[7]

On appeal, the parties then clashed over "several complex legal issues, including the constitutional standards governing excessive force, the law governing use of a taser and other substantial force, the application of qualified immunity, the law governing supplemental interrogatories,

---

[7] Although it is generally not a useful exercise to compare time required in one case to another, the time expended here is comparable that compensated in other cases. *See, e.g.*, *Tatum*, 2010 WL 334975, at *1-2, 8 (awarding fees for over three hundred hours in a § 1983 action, explaining that "the Court must focus on the reasonableness of the *total* hours claimed" and that "30.8 hours spent on researching and drafting a complaint, 105 hours spent on discovery-related matters, and nearly 300 hours spent on trial preparation . . . is not unreasonable in light of the 'big picture.'").

and the Sixth Amendment right to a jury." Gershengorn Decl. ¶ 6. As described above, both Mr. Ali and the City filed lengthy appellate briefs in which they canvassed case law across all jurisdictions at an extremely high level of particularity, and in which the City advanced new factual and legal basis to defend the decision, including multiple novel arguments. Ali Decl. ¶¶ 20-23. The appeal entailed oral argument preparation, including moots, and an oral argument that went well beyond the scheduled time. The work required at each of these stages was substantially higher than usual given that this appeal followed discovery, trial, verdict and supplemental interrogatories, and post-trial motions. Gershengorn Decl. ¶ 8.[8]

Counsel have also been "proactive in exercising billing judgment prior to making" this application. *Medina*, 2019 WL 4370239, at *21. Counsel have excluded the time of law students and paralegals, even though such time is compensable. Ali Decl. ¶¶ 36-37. Counsel also reviewed and substantially reduced junior associate time for work that was not used or only partially used. *See* Ali Decl. Ex. B.

Finally, it warrants emphasis that at every stage, Mr. Jones made efforts to settle and avoid further litigation. Each time, the City declined to consider it, in favor of further litigation. *Id.* ¶¶ 16, 40; Padilla Decl. ¶¶ 5, 12, 15.

---

[8] Mr. Jones similarly notes that the time expended on appeal is less than amounts compensated for other appeals of complexity. *E.g.*, *Brady v. Wal-Mart Stores, Inc.*, No. 03-CV-3843, 2010 WL 4392566, at *8-9 & n.13 (E.D.N.Y. Oct. 29, 2010) (determining "that the total number of compensable hours for the appeal is 373.4 (162 hours for the appellate brief, 100 hours preparing for oral argument, 52.5 hours for the initial fee application, 10 hours for the reply brief, and 48.9 for administrative tasks)").

**III.   An Upward Adjustment Is Appropriate Given The Particular Circumstances Of This Case.**

There is a "strong presumption" that the lodestar is appropriate. *Grant*, 973 F.2d at 101. However, the Court may "adjust the fee upward or downward," *Hensley*, 461 U.S. at 434, "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). Upward enhancements are made "by way of multipliers or enhancement of the lodestar." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 568 (1986).

In determining whether adjustment is appropriate, "[t]he most important factor" is "the degree of success obtained." *LeBlanc-Sternberg*, 143 F.3d at 760 (quoting *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996)). In addition, the Court may consider any *Johnson* factors not "subsumed within the initial calculation" of the presumptively reasonable rate. *Del. Valley*, 478 U.S. at 564.

Several factors specific to this record justify an upward departure in this case. First, the most important factor for adjustment—the "degree of success obtained" for Mr. Jones—clearly surpassed expectations. In fact, the specific circumstances here demonstrate that the outcome surpassed the City's own assessment: As explained, Mr. Jones offered to settle before suit for $20,000 (which the City rejected), and yet obtained a finding of constitutional violation, malicious or wanton conduct, and punitive damages of $30,000—*50% more than the City turned down*. In addition, Mr. Jones obtained not only a verdict recognizing that his constitutional rights were violated, but also a verdict that Lieutenant Treubig acted maliciously and wantonly necessitating punitive damages.

Second, multiple *Johnson* factors not subsumed within the presumptively reasonable fee—namely, the "undesirability" of the case and "nature . . . of the professional relationship with the client," *Arbor Hill*, 522 F.3d at 186-187 & n.3 (quoting *Johnson*, 488 F.2d at 717-19)—deserve special mention here. This case concerned the allegation of a constitutional violation against police officers during the lawful arrest for a drug crime—exceedingly unattractive facts to litigate in front of a jury. Mr. Jones was a convicted felon and in pretrial custody for another offense at the time he sought assistance with this case. Come time to appeal, no private attorneys—even given the possibility of fees—no private attorneys would take the case in light of the poor odds of success. Zelman Decl. ¶ 6; Padilla Decl. ¶ 23. In this case, a national not-for-profit filled the gap. Zelman Decl. ¶ 6; Padilla Decl. ¶ 23; Ali Decl. ¶¶ 4, 11-13. Otherwise, the appeal likely never would have been litigated, and Mr. Jones's civil rights would not have been vindicated. Zelman Decl. ¶ 6; Gershengorn Decl. ¶ 11. Thus, if § 1988 is to succeed in safeguarding "meritorious civil rights claims which might otherwise be abandoned," *Farbotko*, 433 F.3d at 208, and ensuring "those who violate the Nation's fundamental laws are not to proceed with impunity," S. REP. NO. 94–1011, at 2 (1976), courts need to exercise the discretion for upward adjustment when these circumstances arise.

The issue litigated in this case—the unnecessary use of force by law enforcement—is one of the foremost civil rights issues we confront today. In this national reckoning, the issue of qualified immunity has consistently been recognized as a "focal point" in addressing "systemic racism

21

in policing and use of excessive force."[9] *See Jones v. City of Martinsburg, W. Va.*, 961 F.3d 661, 673 (4th Cir. 2020) ("This has to stop."). Civil rights violations—big and small—are a reality of being Black in America, and it is essential that even violations which do not result in death or debilitating injury be litigated. *See generally Jamison v. McClendon*, No. 3:16-CV-595-CWR-LRA, 2020 WL 4497723, at *21 (S.D. Miss. Aug. 4, 2020) (describing the long history of civil rights abuses against Black people, big and small). Here, counsel undertook representation despite the usual "red flags," and in the absence of any severe and permanent injury. They delivered their client a verdict and punitive damages, and obtained a significant precedential decision on qualified immunity—usually a major barrier to civil rights actions in the first place.

Based on this specific record and evidence, Mr. Jones respectfully requests an upward adjustment of 50%, equivalent to the degree to which the outcome at trial and preserved on appeal exceeded the offer Mr. Jones made to, and rejected by the City, before trial.

## IV.    Mr. Jones Is Entitled To An Award Of Costs.

As a prevailing party, Mr. Jones is also entitled to an award of "reasonable out-of-pocket expenses incurred" in relation to the litigation. *LeBlanc-Sternberg,* 143 F.3d at 763. Mr. Jones accordingly seeks an award for the following costs:

**Costs incurred by Mr. Padilla:**

| | |
|---|---|
| Filing Fee | $400 |
| Process Server Fees | $200 |
| Deposition Fees | $1,912.45 |
| **Total:** | $2,562.45 |

---

[9] Hailey Fuchs, *Qualified Immunity Protection for Police Emerges as Flash Point Amid Protests*, N.Y. TIMES, June 23, 2020, https://www.nytimes.com/2020/06/23/us/politics/qualified-immunity.html.

**Costs incurred by Mr. Ali:**

| | |
|---|---|
| Appellate Filing Fee | $505 |
| Cost for transcript of November 19, 2018 post-trial hearing | $144.18 |
| Printing Costs (opening brief, appendix, and reply) | $168.90 |
| Train and lodging for oral argument (Mr. Ali only; excludes cost for associate) | $607.51 |
| **Total:** | $1,425.59 |

## V.     Mr. Jones Is Entitled To Fees For The Time Spent Related To This Motion And Any More Post-Judgment Motions.

It is well established that "[p]revailing parties under Section 1988 are . . . entitled to recover a reasonable fee for preparing and defending a fee application." *Hines*, 862 F.3d at 223; *Weyant*, 198 F.3d at 316. Mr. Jones therefore reserves the right to supplement with further fees related to this application.

Moreover, especially given the City's promise of a "long road ahead," ECF No. 130 at 1, Mr. Jones reserves the right to supplement for fees to oppose any further post-judgment motion the City files. *Weyant*, 198 F.3d at 316.

## CONCLUSION

For the reasons above, Plaintiff's application should be granted.

23

Dated:        Washington, D.C.             Respectfully Submitted,
                September 7, 2020             ___/s/ Amir H. Ali_____

                                           Amir H. Ali
                                         *Admitted Pro Hac Vice*
                                         RODERICK & SOLANGE MACARTHUR
                                           JUSTICE CENTER
                                         501 H Street NE, Suite 275
                                         Washington, DC 20002
                                         (202) 869-3434
                                         amir.ali@macarthurjustice.org

                                         Alexis G. Padilla
                                         290 Howard Avenue
                                         Brooklyn, NY 11233
                                         (917) 238-2993
                                         alexpadilla722@gmail.com

                                         David A. Zelman
                                         612 Eastern Parkway
                                         Brooklyn, NY 11225
                                         (718) 604-3072
                                         dzelman@civrtslaw.com

24