UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
MATTHEW JONES                              16-cv-8080 (JGK)

                  Plaintiff,             DECLARATION OF
                                           ALEXIS G. PADILLA
   -against-

LT. CHRISTOPHER TREUBIG,

                  Defendant.
------------------------------------------------------X

     I, Alexis G. Padilla, an attorney duly admitted to practice law in the State of New York, declare under penalty of perjury that the foregoing is true and correct:

1. My office represents the plaintiff, Matthew Jones, in the above-captioned matter.

2. My office has represented Mr. Jones in this matter since its inception.

3. When I first met Mr. Jones, he was in the custody of the New York City Department of Corrections facing charges unrelated to this matter.

4. On October 18, 2016, my office filed suit against the City of New York and NYPD police officers Michael Vaccaro and Adam Muniz, alleging excessive force, false arrest, and municipal liability as against the City. The initial Complaint also named two John Doe officers and a Jane Doe officer.

5. Not long after receiving an Answer to the initial Complaint, I contacted Melanie Speight, the Assistant Corporation Counsel assigned to the matter, and we discussed the case in depth. At that time, I relayed that my client had authorized me to negotiate an early settlement and I informed Ms. Speight that he would likely be amenable to settling for $20,000.

6. Ms. Speight informed me that her clients were likely not interested in settlement but did agree to submit my demand to her supervisors.

7. On May 15, 2017, approximately seven months after my office filed suit on behalf of Mr. Jones, Ms. Speight informed me in writing that the City of New York was designating the case a No-Pay and that settlement negotiations would not be possible.

8. To that end, the City asked plaintiff to consent to a request that the parties be excused from the Court's mandatory mediation program and proceed directly to trial. I granted consent on plaintiff's behalf and the parties were eventually excused from mediation by the Court.

9. Shortly thereafter, my office filed a First Amended Complaint, which included Lt. Treubig as a defendant along with a John Doe officer and a Jane Doe officer but not the City of New York. The decision to remove the City as a defendant was made in the interest of avoiding unnecessary motion practice and expediting the case to trial.

10. After the filing of the FAC, defendants disclosed the identity of the Jane Doe officer as UC #349, which then necessitated a filing of a Second Amended Complaint.

11. At this time, the decision was made to remove plaintiff's claim for false arrest and proceed only on his claim for excessive force as against the four named officers, all of whom admitted that they participated in his arrest. Again, this decision was made in the interest of avoiding costly and time-consuming motion practice and to expedite trial on plaintiff's claim for excessive force.

12. Even with a paired down complaint and a relatively small demand, defendants refused to engage in settlement negotiations.

13. The parties proceeded to depositions, with plaintiff deposing each of the four officers and defendants deposing Plaintiff and his girlfriend, Stephanie Griffin.

14. At the end of discovery, defendants elected not to make an offer pursuant to F.R.C.P. 68 or to move for summary judgment.

15. I conducted the trial myself, including motions in limine; opening statements; examination of five witnesses; litigation concerning jury instructions; closing statements and post-verdict interrogatories.

16. After a week-long trial, the jury awarded plaintiff 25 cents in compensatory damages and $30,000 in punitive damages as against Lt. Treubig.

17. Following the jury's verdict, defendants asked that interrogatories be submitted to the jurors.

18. In preparation for the conference concerning the substance of the interrogatories, I contacted David Zelman, an attorney with whom I had worked in the past on other civil rights cases. I reached out to Mr. Zelman specifically because I was aware of his extensive experience with litigating federal civil rights trials.

19. Mr. Zelman advised me and provided citations to relevant caselaw that I could use in my arguments before the Court concerning the substance of the post-verdict interrogatories.

20. Following the interrogatories, defendants moved for judgment as a matter of law on the grounds that Lt. Treubig was entitled to qualified immunity. At this point, Mr. Zelman submitted a Notice of Appearance on behalf of Mr. Jones and formally came on to the case to take the lead in drafting and arguing plaintiff's opposition.

21. Prior to Mr. Zelman filing his notice, he and I agreed that if plaintiff prevailed, he would seek fees from the defendant for his work on the case but that he would have no stake in the jury award.

22. The Court granted defendants motion for judgment as a matter of law and plaintiff filed a Notice of Appeal to the Second Circuit Court of Appeals.

23. After the District Court decision, Mr. Zelman and I sought out experienced appellate attorneys but could not find anyone willing to take the case.

24. Given the additional time, cost, and likelihood of futility for an appeal on qualified immunity, Mr. Zelman and I considered advising Mr. Jones to either forego an appeal or pursue the matter *pro se*.

25. Shortly thereafter, Mr. Zelman and I were contacted by Amir Ali, of the MacArthur Justice Foundation and Harvard Law School. Mr. Ali offered to take on Mr. Jones' appeal free of charge.

26. I advised Mr. Jones to hire Mr. Ali because of his extensive experience in litigating civil rights matters before federal appellate courts including matters involving qualified immunity.

27. Prior to Mr. Ali coming onto the case, he and I agreed that if plaintiff prevailed, he would seek fees from the defendant for his work on the case but that he and his organization would have no stake in the jury award.

28. As to my experience, I graduated from Brooklyn Law School in 2012 and have been licensed to practice law in the State of New York since 2013.

29. I have litigated to completion over fifty cases under 42 U.S.C. § 1983 in the Southern and Eastern District Courts of New York.

30. I have also represented plaintiffs in civil rights matters before the Second Circuit Court of Appeals.

31. My current practice is dedicated entirely to criminal defense and civil rights litigation. I currently represent plaintiffs in over two dozen pending civil rights matters in the federal courts and several others in the state courts.

32. As to my trial experience, I have tried twelve cases since 2015, nine of them on my own. Of the twelve, five were federal civil rights cases in which excessive force was alleged.

33. Attached hereto as Exhibit A is a log containing my hours and costs related to this case.

34. Attached hereto as Exhibit B are receipts for costs.

35. I do hereby declare that the above is true and correct.

Dated: September 6, 2020  
New York, NY

Respectfully submitted,  
/s/

*Alexis G. Padilla*