**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MATTHEW JONES,

                    Plaintiff,                          16 **CIVIL** 8080 (JGK)

       -against-

CITY OF NEW YORK, et al.,

                  Defendants.


## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION FOR A NEW TRIAL AND REMITTITUR

Amir H. Ali
*Admitted Pro Hac Vice*
RODERICK & SOLANGE MACARTHUR
  JUSTICE CENTER
501 H Street NE, Suite 275
Washington, DC 20002
(202) 869-3434
amir.ali@macarthurjustice.org

Alexis G. Padilla
290 Howard Avenue
Brooklyn, NY 11233
(917) 238-2993
alexpadilla722@gmail.com

David A. Zelman
612 Eastern Parkway
Brooklyn, NY 11225
(718) 604-3072
dzelman@civrtslaw.com

*Attorneys for Plaintiff Matthew Jones*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................................................... iii

CERTIFICATION OF COMPLIANCE WITH INDIVIDUAL PRACTICE RULE II.D............. v

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I.    The City's Challenge To Mr. Jones's Closing Statement Is Waived And, In Any Event, This Court Correctly Rejected It. ......................................................................................... 2

    A.   Relevant Background. ......................................................................................... 3

    B.   The City Forfeited And Even Affirmatively Waived This Argument. .............................. 7

    C.   The City's Argument Is Meritless And Certainly Not Plain Error................................... 9

II.    The City's Attempt To Set Aside Or Reduce The Jury's Punitive Damage Award Is Baseless. ........................................................................................................................... 13

    A.   The City Waived Its Challenge To The Punitive Damage Award By Failing To Raise It In Its Rule 50(a) Motion............................................................................. 14

    B.   The City Also Forfeited This Argument By Failing To Object To The Jury Charge........ 15

    C.   The City's Argument Is Wrong And Contravenes The Court Of Appeals' Decision In This Case. ......................................................................................... 16

    D.   The City's Undeveloped Argument For Remittitur Is Foreclosed By Second Circuit Precedent. ......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34 (2d Cir. 2015) ..............................8

*Crockett v. City of N.Y.*, 720 F. App'x 85 (2d Cir. 2018) ...........................................7, 10

*DiSorbo v. Hoy*, 343 F.3d 172 (2d Cir. 2003)...........................................................19, 20

*Donnelly v. DeChristoforo*, 416 U.S. 637 (1974) ........................................................9

*Fabri v. United Techs. Int'l., Inc.*, 387 F.3d 109 (2d Cir. 2004) ...................................14

*Garcia v. Dutchess Cty.*, 43 F. Supp. 3d 281 (S.D.N.Y. 2014) ....................................20

*Gonzalez v. Sullivan*, 934 F.2d 419 (2d Cir. 1991).....................................................13

*Ismail v. Cohen*, 899 F.2d 183 (2d Cir. 1990) ...........................................................19

*Jarvis v. Ford Motor Co.*, 283 F.3d 33 (2d Cir.2002) .................................................16

*Jennings v. Town of Stratford*, 263 F. Supp. 3d 391 (D. Conn. 2017) ..........................15

*Jennings v. Yurkiw*,
  No. 14-CV-6377 (SMG), 2018 WL 5630454 (E.D.N.Y. Oct. 31, 2018) ...............................19

*Jester v. Hutt*, 937 F.3d 233 (3d Cir. 2019) ...............................................................18

*Jones v. Treubig*, 963 F.3d 214 (2d Cir. 2020)......................................................*passim*

*Lee v. Edwards*, 101 F.3d 805 (2d Cir. 1996).............................................................19

*Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120 (2d Cir. 2005)......................7, 9, 11, 12

*Matthews v. CTI Container Transp. Int'l Inc.*, 871 F.2d 270 (2d Cir. 1989) ..............................10

*O'Hara v. City of N.Y.*, 570 F. App'x 21 (2d Cir. 2014) ...............................................13

*O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988).......................................................19

*Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006) ...........................................13, 18

*Payne v. Jones*, 711 F.3d 85 (2d Cir. 2013).........................................................18, 19

*Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1 (2d Cir. 1996).............................7

*Quaker State Oil Ref. Corp. v. Kooltone, Inc.*, 649 F.2d 94 (2d Cir. 1981) .......................15

*Reilly v. Natwest Mkts. Grp., Inc.*, 181 F.3d 253 (2d Cir. 1999) .....................................9

*Rivera v. City of N.Y.*, 594 F. App'x 2 (2d Cir. 2014) ..................................................15

*Smith v. Wade*, 461 U.S. 30 (1983)..........................................................................16

*Soto v. Gaudett*, 862 F.3d 148 (2d Cir. 2017)..........................................................20

*Syrnik v. Polones Constr. Corp.*, 918 F. Supp. 2d 262 (S.D.N.Y. 2013)..........................15

*Tolbert v. Queens Coll.*, 242 F.3d 58 (2d Cir. 2001) ...........................................14, 15, 16

*United States v. Clark*, 593 F. App'x 53 (2d Cir. 2014) ..............................................11

*United States v. Coriaty*, 300 F.3d 244 (2d Cir. 2002) ...............................................11

*United States v. Dixon*, 511 F. App'x 48 (2d Cir. 2013) ...............................................................11

*United States v. Fiseku*, 915 F.3d 863 (2d Cir. 2018)...................................................................18

*United States v. Olano*, 507 U.S. 725 (1993)...................................................................................7

*United States v. Peterson*, 808 F.2d 969 (2d Cir. 1987) ...............................................................11

*United States v. Phillips*, 704 F.3d 754 (9th Cir. 2012)................................................................11

*United States v. Yu-Leung*, 51 F.3d 1116 (2d Cir. 1995).........................................................7, 8, 9

**Other Authorities**

Fed. R. Civ. P. 51 ...........................................................................................................................16

Joanna C. Schwartz, *Why Qualified Immunity Fails*, 127 Yale L.J. 2 (2017)..............................20

## CERTIFICATION OF COMPLIANCE WITH INDIVIDUAL PRACTICE RULE II.D

I certify that this Memorandum of Law contains 6995 words and comports with Rule II.D of your Honor's Individual Practices dated May 28, 2020.

Dated:      Washington, D.C.          Respectfully Submitted,
             September 18, 2020          ___/s/ Amir H. Ali_____

Amir H. Ali
*Admitted Pro Hac Vice*
RODERICK & SOLANGE MACARTHUR
  JUSTICE CENTER
501 H Street NE, Suite 275
Washington, DC 20002
(202) 869-3434
amir.ali@macarthurjustice.org

Alexis G. Padilla
290 Howard Avenue
Brooklyn, NY 11233
(917) 238-2993
alexpadilla722@gmail.com

David A. Zelman
612 Eastern Parkway
Brooklyn, NY 11225
(718) 604-3072
dzelman@civrtslaw.com

## <u>PRELIMINARY STATEMENT</u>

In this post-judgment and post-appeal motion, the City raises two arguments it long ago abandoned, multiple times over. The City first says Mr. Jones's counsel made "blatantly" improper statements during closing statements, for instance by saying the defendants "lied." Defs. MOL 10. What the City omits is that it failed to object to these "blatant" statements and stated on the record that it had consciously refrained from objecting, even despite the Court's explicit warning that it would forfeit future challenges. The City's second argument is that the jury's punitive damage award is "unsupported by the record and the law." *Id.* at 12. What the City omits is that it never raised this argument in its Rule 50(a) motion for judgment during trial and that binding Court of Appeals precedent required it to do so. Indeed, this argument is *doubly* forgone because the City also failed to object when the Court submitted punitive damages to the jury, which would have also been required by binding caselaw.

In any event, the City's arguments are unpersuasive. As to the alleged improper statements, the City could not muster *a single* Court of Appeals case holding that such statements warrant a new trial—indeed, the cases the City cites (and numerous it left out) say the opposite. And even assuming the unobjected-to statements could have been prejudicial, the City offers no basis to conclude that the jury disregarded the Court's contemporaneous curative instructions or the Court's final instructions that the jury must ground its verdict solely in the evidence. As to punitive damages, the City's argument directly conflicts with the Court of Appeals' decision in this case. As the Court of Appeals explained, viewed in Mr. Jones's favor, this is a case in which there was "clear evidence" that Defendant Christopher Treubig "had enough time to re-assess the situation," but used his taser against a person who "was no longer resisting arrest or posing a threat to the officers or others, but rather lying face down on the ground with his arms spread." *Jones v. Treubig*,

963 F.3d 214, 237, 240 (2d Cir. 2020). The jury was correctly instructed to consider whether this conduct arose from a malicious or wanton disregard for Mr. Jones's rights and concluded that it did. The City's argument to substitute its view in place of the jury's is precisely the argument that the Court of Appeals rejected on appeal. To the extent that the City's undeveloped, single-paragraph argument suffices to state a request for remittitur, it has advanced a methodology that has been repeatedly and explicitly rejected by the Court of Appeals (and, in fact, all other circuits too). The City could not muster *a single* case setting aside or remitting punitive damages of $30,000 which involved substantial force.

Four years into this litigation, including a trial, first round of post-judgment motions and appeal, we are litigating issues the City long ago abandoned, both of which required it to bury binding precedent. The City's motion should be denied.

## <u>ARGUMENT</u>

### I.  The City's Challenge To Mr. Jones's Closing Statement Is Waived And, In Any Event, This Court Correctly Rejected It.

The City says it is entitled to a new trial based on statements made during closing statements. It points to instances in which counsel stated that the defendants "lied" and referred to the defendants being "less than honest" and "less than fully frank." Defs. MOL 7-8. The City also extracts a hodgepodge of other statements—for instance, that trial counsel did not think the jury "should accept" the defendants' story; that the City's theory effectively treated Mr. Jones as "a second class citizen"; and that jurors have "a civic duty" to hold the officers accountable. *Id* at 8, 10-11. The City asserts that these statements "crossed the line" and "blatantly appealed to the jury's sympathies, passions, and prejudices" and "appeal[ed] to national and local discourse and unrest." *Id*. at 6, 10.

The City's present outrage is belied by its own failure to even object to these statements, despite the Court's explicit warning and invitation to do so. In any case, this Court correctly rejected this argument when the City attempted to belatedly raise it at trial.

### A.  Relevant Background.

The City's motion leaves out several pertinent facts, including the City's decisions not to contemporaneously object, this Court's warnings to do so, and the fact that this Court has already rejected this argument. Mr. Jones accordingly provides this more complete account, with record citations:

At a three-day trial, the plaintiff Matthew Jones and the defendants offered starkly different accounts of the events. Mr. Jones testified that upon the slightest resistance—inquiring "why [he] was under arrest" and not volunteering his hands—he was beaten, maced, and tased. Tr. 40, 54.[1] According to Mr. Jones, after the officers had sweep kicked him, hit him with an ASP, and sprayed pepper spray into his face, Defendant Christopher Treubig announced he was going to use his taser. ECF 110 at 7. Mr. Jones, who did not hear the warning, continued to lay on the ground for somewhere between 15 seconds to "a minute." Tr. 59, 152, 200, 234. Mr. Jones, badly beaten, attempted to return to his feet and was "able to get up to [his] knees." Tr. 58-59, 116. At this point, one of the officers in the crowd said, "hit him." Tr. 59. Treubig deployed his taser against Mr. Jones in its most powerful setting, "cartridge mode." Tr. 280. Two metal prongs pierced into Mr. Jones's back. Tr. 69-70. Treubig then "cycled" 1200 to 1600 volts through Mr. Jones's central nervous system, sufficient to "fully incapacitate a grown man." Tr. 153-54, 261-62 274.  Mr. Jones dropped "back on the ground with [his] arms sprayed out." Tr. 59. Mr. Jones laid on the ground

---

[1] The trial transcript ("Tr.") is consecutively paginated and available ECF Nos. 115 (Tr. 1-105), 117 (Tr. 106-288), and 119 (Tr. 289-430).

with his arms out, no longer resisting in any fashion. ECF 108 at 7-8, ECF 110 at 8; *see also* Tr. 59. Treubig, who had time to "[r]eassess the situation," nonetheless "recycled" the taser, sending another 1200 to 1600 volts into Mr. Jones's central nervous system. Tr. 154-55, 262; *see also Jones*, 963 F.3d at 220-21 (Court of Appeals recounting the same events, viewing the evidence in the light most favorable to Mr. Jones).

The defendant officers "vigorously disputed the degree of resistance that Jones offered during the incident." *Jones*, 963 F.3d at 221. They "claimed that [Mr. Jones] resisted arrest 'aggressively and actively.'" *Id.* Accordingly, credibility was a principal issue: Was this a circumstance "in which Jones was actively resisting arrest and such resistance justified their reasonable use of force," *id.*, or in which the defendants resorted to unjustified force, culminating with the use of a taser against a person who was "no longer resisting and face down on the ground with his arms spread after the first tasing (as Jones testified here)"? *Id.* at 238.[2]

In the City's presentation to the jury, it repeatedly called Mr. Jones's credibility into question. It asked why Mr. Jones "would concoct such a ridiculous story," saying "he simply cannot be believed." Tr. 332. It repeated over and over that "plaintiff can't be believed." Tr. 334. The City also sought to undermine Mr. Jones and justify the force against him by emphasizing he was the type of person who would participate in "a felony narcotics transaction" and had a criminal history.

---

[2] The defendants other than Defendant Treubig additionally argued that "Jones could not identify which specific officer beat him with the asp and pepper-sprayed him, so no one could be held accountable for the force that preceded the tasing." *Jones*, 963 F.3d at 221. In other words, based on the City's own theory at trial, the jury may have concluded that the other officers who beat Mr. Jones used excessive force, but been unable to identify which they were.

Tr. 309. The City argued that Mr. Jones had "already been convicted of selling crack cocaine" and was therefore the kind of person who would "do everything in his power, use all of his strength, not to be arrested." Tr. 26.

Mr. Jones's presentation likewise focused on attacking the defendants' credibility and responded to the defendants' attack on Mr. Jones's character, saying that the City sought to treat Mr. Jones as "a second class citizen." Tr. 340. Initially, counsel addressed the credibility dispute by describing the defendants as having "lied." Tr. 335-36. Defense counsel never objected any time that Mr. Jones's counsel used that term. The Court interceded, instructing counsel that "lie" is a "jaded word" and disfavored. Tr. 336-37. The Court advised counsel to "use another word 'not truthful' or 'not accurate'. . . [o]r anything else." Tr. 337.

The Court noted on the record that the City had failed to object. *Id.* ("I note that there was no objection"). At this point, the City explained that it had consciously refrained from objecting, choosing not "to disrupt" Mr. Jones's summation. *Id*. This Court warned that this was not an adequate excuse and that, to the extent the City chose to forgo contemporaneous objections, it did so at its own peril: "The word is 'object' and the fact that you don't want to interrupt a summation is not a basis for not objecting if there is something that's done that is not quite right." *Id*. The City responded that it "certainly" understood its obligation to object. *Id*. The City stated it "would just request that your Honor give a curative instruction." *Id*. Despite the lack of objection, the Court still provided an instruction. It advised the jury: "I just had a brief discussion because 'lie' is a jaded word and there's a preference not to use that word. There are many other ways to express the concept." Tr. 338. The City did not voice any issue with the Court's instruction to Mr. Jones's counsel to use alternative language, or with the curative instruction it had asked for.

Despite the Court's warning, the City stuck to its earlier strategy. It did not object to *virtually any* of the statements it complains about now. For instance, as instructed, trial counsel adapted his closing statement to say the defendants were "less than honest," "less than fully frank" and "haven't told you the truth." Tr. 338, 347. The City withheld any objection.[3] Similarly, when counsel responded that the City's credibility arguments and justification for the force effectively sought to treat Mr. Jones as "a second class citizen," the City did not object. Tr. 340, 342.

Following closing statements, the City belatedly argued that Mr. Jones had essentially told the jury "to not consider the law." Tr. 348. The Court, based on its own perception of the closing statement, rejected that characterization. It explained, "No. I didn't take that as not to consider the law." *Id.* The Court then recounted on the record that the City's characterization did not accurately reflect the summation, and that the Court actively addressed any objections that were raised:

> Did the plaintiff's summation urge the jury to ignore the law? No, it didn't urge the jury to ignore the law. It asked whether the use of the force was reasonable under all of these circumstances and asked that repeatedly and I fairly instruct the jury on the law with respect to excessive force and reasonable force.
>
> On a couple of occasions where the defense summation overstepped the bounds, I interceded either because there was an objection or sua sponte. If there was an objection that wasn't justified because it was simply fair argument, I overruled the objection.
>
> Is there anything that was said in the defense summation that suggests to me that the instructions on the law was somehow wrong? No.

Tr. 350. The Court reminded the City that it had even taken care to give curative instructions during Mr. Jones's summation when they "were not asked for." Tr. 351.

---

[3] When trial counsel inadvertently said the word "lied," he stopped midsentence and the Court struck the statement on the spot. Tr. 347

The Court reminded the City that it had opened the door to arguments that it treated the plaintiff as "a second-class citizen" by placing "an emphasis on [his] prior convictions or emphasis on the explanation of the events of the arrest and questions of the truthfulness of the plaintiff's story." Tr. 349. The Court explained that this "would lead logically to an argument by the plaintiff which is the argument that I heard which was the defendants ask you to treat the plaintiff as a second class citizen." *Id.* Indeed, as the Court noted, it had "warned [the City] before trial" that reliance on Mr. Jones's criminal history would open this door, yet the City decided to do it anyways. Tr. 348-49 The Court reiterated: "I said that that was what you would invite and lo and behold, that's what the defense summation invited and so that was fair response." Tr. 349.

### B.  The City Forfeited And Even Affirmatively Waived This Argument.

When a party fails to contemporaneously object to a statement made at trial, he or she forfeits the argument, and any subsequent challenge is reviewed only for "plain error." *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005); *Crockett v. City of N.Y.*, 720 F. App'x 85, 87 (2d Cir. 2018) (recognizing that a party's failure to object to "remarks regarding the credibility of two of plaintiff's witnesses" meant they were subject to "plain error review"). An error is plain only if it "was 'so serious and flagrant that it goes to the very integrity of the trial.'" *Marcic*, 397 F.3d at 124. The Court of Appeals has "warned that the plain error exception 'should only be invoked with extreme caution in the civil context.'" *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 18 (2d Cir. 1996). However, even this extremely limited review is available only where a party's failure to object was "simply a matter of oversight." *United States v. Yu-Leung*, 51 F.3d 1116, 1122 (2d Cir. 1995). If a party "consciously refrains from objecting as a tactical matter, then that action constitutes a true 'waiver,' which will negate even plain error review." *Id.*; *see also United States v. Olano*, 507 U.S. 725, 733 (1993) (describing waiver as the "intentional relinquishment or abandonment of a known right," which is not subject to review).

As set forth above, the City did not object to virtually any of the statements it now complains about. It did not object *any* of the times Mr. Jones's counsel addressed credibility by using the word "lied," and the Court specifically "note[d]" the failure to object on the record. Tr. 336-37. The City did not object when the Court advised Mr. Jones to instead "use another word 'not truthful' or 'not accurate'. . . [o]r anything else,'" Tr. 337, and it did not object *any* of the times Mr. Jones accordingly described the defendants as "less than honest," "less than fully frank" and "haven't told you the truth." Tr. 338, 347. And the City did not object when counsel responded to the City's references to Mr. Jones's character and credibility by stating it would treat Mr. Jones as "a second class citizen." Tr. 340, 342.

Indeed, because the City's failure to object was not "simply a matter of oversight," but it "consciously refrain[ed] from objecting," this "constitutes a true 'waiver.'" *Yu-Leung*, 51 F.3d at 1122. As set forth above, after this Court noted the City's failure to object to the term "lied," the City's explicitly stated it had decided not to object because it "didn't want to disrupt" the summation. Tr. 337. When the Court then warned the City to object if it wished to preserve errors, the City continued with its earlier decision, not objecting to the Court's curative statement (which the City itself requested) or to virtually any of the statements that it now challenges.

Having made the decision not to object at the time, the City cannot now allege error. "The timely objection requirement is 'not merely a technicality.'" *Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 46 (2d Cir. 2015). Its purpose is "to give the court and the opposing party the opportunity to correct an error in the conduct of the trial." *Id*. And, here, when the City *did* lodge a valid objection, that is exactly what the Court did. For instance, the City's present motion refers to trial counsel's statement, "why does it seem like these kinds of things only happen in places like East Harlem?" Defs. MOL 10-11. What the City omits is that the Court sustained

the City's objection to this statement and provided a curative instruction. Tr. 344-45. Indeed, even when the City's objections were overruled, the Court generally provided clarifying instructions to the jury. *See, e.g.*, Tr. 345 (overruling objection to counsel's reference to the jury's "civic duty," but providing clarifying instructions).

To be sure, it was the City's prerogative to make a tactical assessment that the benefit of objecting to these statements was outweighed by the risk that the jury would see it as vain attempts to "disrupt" the plaintiff's closing statement. Tr. 337. But having made that conscious decision— even despite this Court's warning—the City's present challenge comes "to a grinding halt." *Yu-Leung*, 51 F.3d at 1122.

### C.  The City's Argument Is Meritless And Certainly Not Plain Error.

  *i.      The Excerpted Statements Did Not Cause Undue Prejudice.*

The Court of Appeals has held that "a party seeking a new trial on the basis of opposing counsel's improper statements to the jury faces a heavy burden, as '[r]arely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal.'" *Marcic*, 397 F.3d at 124 (quoting *Reilly v. Natwest Mkts. Grp., Inc.*, 181 F.3d 253, 271 (2d Cir. 1999)). The challenged remark must be one that "irreparably taints the proceedings." *Id.* at 127. Moreover, even disregarding the City's conscious decision not to object and assuming it was merely an oversight, it would have to additionally show that this was a plain error that the Court should have addressed on its own, without objection—one "so serious and flagrant that it goes to the very integrity of the trial." *Id.* at 124.

The Supreme Court and Court of Appeals have cautioned that closing statements are rarely perfect; they are "seldom carefully constructed in toto before the event" and "improvisation frequently results in syntax left imperfect and meaning less than crystal clear." *Donnelly v. DeChristoforo*, 416 U.S. 637, 646-47 (1974). As the City itself put it in a recent appeal where the City

referred to a witness as a "liar" during summations: "[W]e trust juries, who have sat through lengthy presentations of evidence, both sides' summations, and detailed jury instructions to separate the chaff from the wheat—instead of automatically drawing the 'most damaging meaning . . . from the plethora of less damaging interpretations.'" Br. of Appellees at 15, *Crockett v. City of N.Y.*, 720 F. App'x 85 (2d Cir. 2018), 2017 WL 6597762 (quoting *Donnelly*, 416 U.S. at 646). "Because of this trust, not every inartful, improper, or poorly supported remark during summation justifies granting a new trial." *Id*.

As described above, this Court already rejected the City's belated challenge to Mr. Jones's summation. The City made the same argument as here—that Mr. Jones's summation essentially told the jury "to not consider the law," Tr. 348—and this Court disagreed: "No, it didn't urge the jury to ignore the law. It asked whether the use of the force was reasonable under all of these circumstances and asked that repeatedly and I fairly in-struct the jury on the law with respect to excessive force and reasonable force." Tr. 349. And the Court explained that the City knowingly opened the door to these comments as a "fair response," despite the Court's warnings "before trial . . . that was what you would invite and lo and behold, that's what the defense summation invited." Tr. 348-49. The City does not even acknowledge the Court's prior rejection of this argument, let alone provide a basis to reconsider. When the Court of Appeals considers "belatedly raised objections to [a] summation," it has deferred to a district court's perception of the summation at the time. *Matthews v. CTI Container Transp. Int'l Inc.*, 871 F.2d 270, 278 (2d Cir. 1989).

Moreover, the Court's ruling was plainly correct. The Court of Appeals described it as "hardly commendable" where trial counsel went overboard, saying he was "in a state of disbelief that someone would tell such outrageous lies under oath," "commenting repeatedly on the ease with which [the opposing party's] witnesses lied and the low regard in which they appeared to

hold the truth," and by "characterizing [the opposing party's] case as 'frivolous,' and 'a joke'" or "'as silly a thing as I have seen in a case, I can't imagine anything sillier.'" *Marcic*, 397 F.3d at 127. But even in a case where counsel went so over the top, it held that the comments were "not so inflammatory or so unsupported by the record as to affect the integrity of the trial and entitle [the opposing party] to a new trial." *Id*. Moreover, the Court has repeatedly held that "[u]se of the words 'liar' and 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to be inflammatory." *United States v. Coriaty*, 300 F.3d 244, 255 (2d Cir. 2002); *United States v. Clark*, 593 F. App'x 53, 55 (2d Cir. 2014) (same); *United States v. Peterson*, 808 F.2d 969, 977 (2d Cir. 1987) (same); *United States v. Dixon*, 511 F. App'x 48, 51-52 (2d Cir. 2013) (holding that "the government's summation argument that [the defendant] 'lied' . . . and was 'not telling the truth' on the stand . . . was not so inflammatory that it denied defendant a fair trial").

Here, "credibility [was] clearly in issue." *Coriaty*, 300 F.3d at 255. When Mr. Jones's counsel used the word "lied,"[4] the Court exercised significant caution and advised counsel to use alternative phrasing. Counsel did not say anything remotely approaching "a state of disbelief that someone would tell such outrageous lies under oath" or "characterizing [the opposing party's] case as 'frivolous,' and 'a joke,'" or "'as silly a thing as I have seen in a case, I can't imagine anything sillier'"—themselves not grounds for a new trial. *Marcic*, 397 F.3d at 127; *see also Coriaty*, 300 F.3d at 255 (finding that referring to a witness as a "liar" and using the phrase "garbage in, garbage

---

[4] Courts have noted that saying a witness "lied" is "less problematic than calling him a liar in general," which is what "could have the tendency to overtake the role of the jury as the arbiter of credibility." *United States v. Phillips*, 704 F.3d 754, 767 (9th Cir. 2012).

out," "to suggest that the expert's conclusions could not be trusted because they were based on information furnished by [the defendant]" did not come "within hailing distance of prejudice").[5]

### ii.   Even If Statements Could Have Been Prejudicial, The City Cannot Show They Tainted The Jury's Verdict.

Assuming for the sake of argument that the statements isolated by the City could have caused "undue prejudice or passion," the City cannot show that they tainted the jury's verdict.

The jury reached its verdict after a three-day trial, in which it heard testimony both from the plaintiff Mr. Jones and all the officers. As the Court of Appeals described, viewed in Mr. Jones's favor, the evidence supported a finding that, despite having time to reassess the circumstances and to see Mr. Jones "face down on the ground with his arms spread," Treubig "re-cycled his taser and sent another electric shock through" Mr. Jones's nervous system—an action that "no reasonable officer could believe . . . was lawful." *Jones*, 963 F.3d at 230. The City's desire to have this Court speculate that the verdict was based on the "most damaging meaning" of statements made during closing argument—rather than on the evidence presented and sufficient to support a violation of clearly established law—is meritless. *See Marcic*, 397 F.3d at 124 (explaining that "[p]rejudice is measured by assessing the error in light of the record as a whole" and improper statements "will frequently be *de minimis* in the context of the entire trial").

Moreover, even assuming that these various unobjected-to statements could have caused the jury to disregard the evidence, this Court addressed that risk through its curative instructions

---

[5] Ironically, the closest thing to these statements was the City's own remarks, questioning why Mr. Jones "would concoct such a ridiculous story" and repeatedly stating "he simply cannot be believed." Tr. 332. This shows that both parties vigorously focused on credibility and reaffirms this Court's conclusion that the City invited the responses it now complains of.

in the moment and its subsequent instructions to the jury. As set forth above, *even though the City failed to object* to the term "lied," this Court gave a curative instruction that directly confronted the issue: "I just had a brief discussion because 'lie' is a jaded word and there's a preference not to use that word. There are many other ways to express the concept." Tr. 338; *see Patterson v. Balsamico*, 440 F.3d 104, 119 (2d Cir. 2006) (in light of curative instruction, improper argument did not warrant a new trial); *O'Hara v. City of N.Y.*, 570 F. App'x 21, 25 (2d Cir. 2014) ("[W]e need not decide whether the challenged rebuttal argument was unfair because, in any event, the district court's curative instruction was sufficient to avoid undue prejudice."). In fact, the City's attempt to undermine the efficacy of a curative instruction is rather incredible given that *it explicitly proposed that as a solution. See* Tr. 337 ("I would just request that your Honor give a curative instruction").

Any possibility of prejudice was further quelled by the Court's final instructions. The Court specifically instructed the jury that its verdict "must be based solely on the evidence or the lack of evidence." Tr. 355. This included a specific instruction that counsels' closing statements were *not* evidence on which the verdict may be based: "What counsel have said in their opening statements, in their closing arguments or in their questions or objections is not evidence." Tr. 354; *see Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (finding no prejudice from improper summation where trial court "instructed the jury that the summations were not evidence and that the jury was the sole judge of the facts").

## II.     The City's Attempt To Set Aside Or Reduce The Jury's Punitive Damage Award Is Baseless.

The City contends that the jury's punitive damage award of $30,000 must be set aside because it is "unsupported by the record" because there "is simply no evidence in the record from which one could infer the malicious or wanton intent necessary." Defs. MOL 12, 15. As set forth

below, this argument is doubly waived and, in any event, it conflicts with the Court of Appeals opinion in this case.

> ### A.   The City Waived Its Challenge To The Punitive Damage Award By Failing To Raise It In Its Rule 50(a) Motion.

In arguing that "the jury's punitive damage award must be set aside as unsupported by the record," Defs. MOL 12, the City does not mention that it never raised this argument in its Rule 50(a) motion. The City also fails to mention the Court of Appeals' clear caselaw that required the City to do so.

To preserve an argument for challenge after trial, a party must file a Rule 50(a) motion and in it "'must at least identify the specific element that the defendant contends is insufficiently supported.'" *Tolbert v. Queens Coll.*, 242 F.3d 58, 76 (2d Cir. 2001). "A motion that identifies one element of a claim is insufficient to permit the district court to grant JMOL for lack of proof of some other, unspecified, element" and therefore forecloses review "unless review is required in order to prevent manifest injustice." *Id.* at 77. Applying these principles to punitive damages, the Court of Appeals has held that a Rule 50(a) motion that requests judgment as to liability and "did not challenge the sufficiency of [the] evidence with respect to punitive damages" is insufficient to preserve a challenge to the jury's assessment of punitive damages. *Id.* Or, as the Court of Appeals has said differently, a Rule 50(a) motion that seeks the "dismissal of all claims" is insufficient to preserve a challenge to a punitive damage award; instead in the party must assert "in the alternative that, even assuming a claim had been made out, plaintiffs had not shown an entitlement to punitive damages." *Fabri v. United Techs. Int'l., Inc.*, 387 F.3d 109, 125 (2d Cir. 2004) (concluding that where defendants failed to do this, they "waived any argument that there was insufficient evidence to support a punitive damages award").

14

Here, the City's Rule 50(a) motion sought judgment on two bases: (1) that the evidence was insufficient to show excessive force and (2) qualified immunity. Tr. 302-14. The City has abandoned both arguments for good reason: They are both squarely foreclosed by the Court of Appeals' conclusion that the jury's verdict supported not just excessive force, but a violation of clearly established law. The City's Rule 50(a) motion never asserted the challenge to punitive damages that it now tries to assert as a basis for a new trial—in fact, the City's motion made "no mention whatever" of punitive damages during its submissions to the Court, let alone a specific submission "that there was insufficient proof that they had a mental state that could justify an award of such damages." *Tolbert*, 242 F.3d at 77.

The purpose of requiring a litigant to raise specific issues in a Rule 50(a) motion is "to inform the opposing party of the precise issue as to which more evidence is needed in order to warrant its submission to the jury." *Id.* at 76-77. Having forgone the argument at trial, and deprived Mr. Jones and the Court of the opportunity to address whatever problem it is now alleging, the City cannot now assert it as basis for a new trial. Indeed, the Court of Appeals has held it is an abuse of discretion to find a "manifest injustice" and grant a new trial in these circumstances. *Rivera v. City of N.Y.*, 594 F. App'x 2, 6 (2d Cir. 2014).

**B.    The City Also Forfeited This Argument By Failing To Object To The Jury Charge.**

Indeed, this case involves forfeiture on top of waiver: The City forfeited this challenge to the jury's punitive damage award because it "did not object to the jury charges provided by the Court which explicitly addressed the issue of punitive damages." *Syrnik v. Polones Constr. Corp.*, 918 F. Supp. 2d 262, 264 (S.D.N.Y. 2013); *Quaker State Oil Ref. Corp. v. Kooltone, Inc.*, 649 F.2d 94, 96 (2d Cir. 1981) ("appellants failed to object specifically to the instruction on punitive damages"); *see also Jennings v. Town of Stratford*, 263 F. Supp. 3d 391, 410 (D. Conn. 2017) (same);

15

*Jarvis v. Ford Motor Co.*, 283 F.3d 33, 57 (2d Cir.2002) (Sotomayor, J.) ("We have previously emphasized that failure to object to a jury instruction . . . prior to the jury retiring results in a waiver of that objection" (quotation marks and alteration omitted)); Fed. R. Civ. P. 51.

### C. The City's Argument Is Wrong And Contravenes The Court Of Appeals' Decision In This Case.

"An award of punitive damages is 'a discretionary moral judgment' that the defendant has engaged in conduct that is so reprehensible that it warrants punishment." *Tolbert*, 242 F.3d at 77 (quoting *Smith v. Wade*, 461 U.S. 30, 52 (1983)). They may be awarded if "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves *reckless or callous indifference to the federally protected rights of others*." *Id.* (emphasis in original).

The City does not contest that, given the jury's verdict, the facts must be viewed in Mr. Jones's favor. *See* Defs. MOL 4. On those facts, "[t]his is not a case where a police officer did not have a reasonable opportunity to re-assess the circumstances before utilizing additional force." *Jones*, 963 F.3d at 236. Despite "clear evidence that he had enough time to re-assess the situation between the first and second use of the taser," Treubig cycled it through Mr. Jones's body when he "was no longer resisting arrest or posing a threat to the officers or others, but rather lying face down on the ground with his arms spread." *Id.* at 236, 240. "On those facts, no reasonable officer could believe that the use of the taser a second time against Jones was lawful." *Id.* at 230.

Moreover, the City does not contest that this Court correctly instructed the jury as to the legal requirement for punitive damages. The Court instructed that the jury "may award the plaintiff punitive damages if you find that the acts or omissions of the defendant were done maliciously or wantonly," either because it was "prompted by ill will or spite" or it was "done with a reckless or call[o]us disregard for the rights of the injured person." Tr. 378.

16

Yet the City now asks this Court to make an independent finding that Treubig's tasing of an unresisting person could not have arisen from a malicious or reckless disregard for Mr. Jones's rights. The City tells the Court to find that Treubig was just trying to "ensure plaintiff's safety as well as the safety of the other officers" and that this was "the first and last time" Treubig used his taser. Defs. MOL 14. These are transparent attempts to have the Court intrude on the province of the jury.

If this line of argument sounds familiar, that is because it is the same one the City advanced, and the Second Circuit rejected, on appeal. In its post-trial Rule 50 motion, the City urged this Court to "independently conclude[] that Lt. Treubig 'reasonably believed that the plaintiff was still actively resisting arrest when he cycled the taser the second time' without any additional findings by the jury in the special interrogatories to support" that determination. *Jones*, 963 F.3d at 231 (citation omitted). The Court of Appeals rejected that argument, holding that "it was the jury's role to consider the reasonableness of Lt. Treubig's stated belief," consistent with this Court's instructions. *Id*. at 232. "Given that the jury reached its verdict under the correct instructions," the City was wrong to ask the district court to "'substitute its view for adequately supported findings that were implicit in the jury's verdict.'" *Id*.

All of this remains true here: the Court instructed the jury to decide whether Treubig acted with malicious or wanton disregard for Mr. Jones's rights. The Court correctly instructed the jury to make that determination and it did. The Court should not substitute the City's view for the jury's.

### D. The City's Undeveloped Argument For Remittitur Is Foreclosed By Second Circuit Precedent.

Although the City styles its motion as one for "remittitur," that request is supported by an undeveloped argument in a single paragraph at the end of its motion. In that paragraph, the City says that the jury's punitive damages of $30,000 should be reduced because of the "disparity

between" those damages and the nominal damages of $0.25, "a ratio of 120:1." Defs. MOL 16. The City does not cite *a single authority* holding it is appropriate to consider the ratio between punitive damages and nominal damages (as opposed to a case involving actual compensatory damages).

As an initial matter, "because [the City's] argument amounts to a single paragraph bereft of any citation to applicable legal authority" the Court should "deem the point abandoned." *United States v. Fiseku*, 915 F.3d 863, 869 n.5 (2d Cir. 2018).

If the Court considers the argument, it should note that the City *once again* advances an argument that has been rejected by binding precedent. Contrary to the City's argument, the Court of Appeals has explicitly and repeatedly held "'in a § 1983 case in which the compensatory damages are nominal, . . . the use of a multiplier to assess punitive damages is *not* the best tool.'" *Patterson*, 440 F.3d at 121 n.11 (emphasis added); *see also Payne v. Jones*, 711 F.3d 85, 103 (2d Cir. 2013) ("The ratio, without regard to the amounts, tells us little of value in this case to help answer the question whether the punitive award was excessive.").[6] Indeed, federal circuits have been unanimous that "the ratio guidepost is inapt for nominal awards." *Jester v. Hutt*, 937 F.3d 233, 242-43 (3d Cir. 2019) (collecting cases, including from the Second Circuit). In fact, the district court decision that the City cites in favor of the ratio method explicitly recognizes that the Court of Appeals has held it "*completely inapplicable* where the jury awarded only nominal

---

[6] Thus, contrary to the City's simplistic argument, the Court of Appeals has approved of punitive damages that would have amounted to a "75,000 to 1" ratio with nominal damages and has accordingly explained that "the large size of the ratio has no necessary bearing on the appropriateness of the amount of punitive damages." *Payne*, 711 F.3d at 102.

compensatory damages." *Jennings v. Yurkiw*, No. 14-CV-6377 (SMG), 2018 WL 5630454, at *17 (E.D.N.Y. Oct. 31, 2018) (emphasis added) (citing *Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir. 1996)).[7] Because this is the City's sole basis for requesting remittitur, the Court should reject its argument.

The test for remittitur is whether an "award is so high as to shock the judicial conscience." *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990). And the correct way "[t]o determine the appropriate level of punitive damages" is to "assess such awards in other police misconduct cases." *DiSorbo v. Hoy*, 343 F.3d 172, 188 (2d Cir. 2003).

The Court of Appeals has consistently upheld punitive damages higher than $30,000 in excessive force cases that involve severe force such as weapons. *See, e.g.*, *O'Neill v. Krzeminski*, 839 F.2d 9, 10 (2d Cir. 1988) (upholding a $185,000 punitive damage award for the brutal beating of a defenseless plaintiff, including one blow with a blackjack); *Ismail*, 899 F.2d at 184-86 (upholding a $150,000 punitive damages award where the defendant officer struck the plaintiff in the side of the head without warning, pressed his knee into the plaintiff's back, and made threats to kill him). When the Second Circuit has remitted in excessive force cases, the cases have generally not involved weapons and, even still, the Court has remitted to amounts *higher than* $30,000. *See Payne*, 711 F.3d at 87-88, 101 (reducing to $100,000 where an officer conducting an arrest was provoked and kicked in the groin, and responded with "a verbal taunt" and punched the plaintiff several times); *Lee*, 101 F.3d at 807 (2d Cir. 1996) (reducing to $75,000 where officer struck

---

[7] It is difficult to imagine the City did not know it was advancing an argument that is contrary to binding Court of Appeals precedent.

plaintiff repeatedly with baton); *DiSorbo*, 343 F.3d at 189 (reducing to $75,000 where the officer used physical force against the plaintiff but did not use a weapon).

And, as set forth above, viewing the facts in Mr. Jones's favor, Treubig recycled a taser into the nervous system of "an individual who was no longer resisting arrest and posing no threat." *Jones*, 963 F.3d at 219. "It is beyond doubt" that use of a taser "constitutes significant force." *Id.* at 226. Courts in this circuit have seen tasers kill even just in "stun mode," *e.g.*, *Garcia v. Dutchess Cty.*, 43 F. Supp. 3d 281, 299 (S.D.N.Y. 2014), *aff'd Garcia v. Sistarenik*, 603 F. App'x 61 (2d Cir. 2015), and they have seen tasers permanently debilitate, *Soto v. Gaudett*, 862 F.3d 148, 152 (2d Cir. 2017) ("severe traumatic brain damage" that "requires around-the-clock care and life support"). The jury was instructed to fashion a punitive damage award based on the "underlying purposes of punitive damages," including the amount needed to "to punish a defendant for outrageous conduct or to defer the defendant and others like the defendant from performing similar conduct in the future." Tr. 379. It deliberated conscientiously, and returned a verdict of liability and $30,000 in punitive damages upon finding malicious or wanton disregard for Mr. Jones's rights. This amount is eminently reasonable.[8]

---

[8] The City's motion repeatedly tries to persuade the Court to displace the jury's verdict by generating guilt that Treubig will be "saddled with," "personally carry[] the weight of," and "bear a $30,000 award of punitive damages." Defs. MOL 1, 12. The appropriate punishment is, of course, what the jury was instructed to—and did—decide. But this is also misleading. A study of indemnification over five years in the seventy largest law enforcement agencies, including the NYPD, found that "no officer paid a penny of the punitive damages awarded to plaintiffs." Joanna C. Schwartz, *Why Qualified Immunity Fails*, 127 Yale L.J. 2, 59 (2017).

*      *      *

We have reached the bottom of the barrel: this motion asserts two arguments abandoned long ago, multiple times over. And even still, both required the City to omit binding Court of Appeals caselaw. This is no doubt the "long road ahead" the City promised even though we are post-verdict and post-appeal. ECF No. 130 at 1. At a recent status conference, this Court made clear that "to the extent that there are further motions" in this case, it "will have to consider all of that" in deciding the appropriate fees to grant in this case. ECF No. 149 at 13. Mr. Jones cannot prevent the City from filing motions on waived and foreclosed arguments, but he respectfully requests the Court take it into consideration when resolving the pending fee application.

## CONCLUSION

The City's motion should be denied.


Dated:        Washington, D.C.              Respectfully Submitted,
              September 18, 2020            ___/s/ Amir H. Ali_____

                                           Amir H. Ali
                                           *Admitted Pro Hac Vice*
                                           RODERICK & SOLANGE MACARTHUR
                                             JUSTICE CENTER
                                           501 H Street NE, Suite 275
                                           Washington, DC 20002
                                           (202) 869-3434
                                           amir.ali@macarthurjustice.org

                                           Alexis G. Padilla
                                           290 Howard Avenue
                                           Brooklyn, NY 11233
                                           (917) 238-2993
                                           alexpadilla722@gmail.com

                                           David A. Zelman
                                           612 Eastern Parkway
                                           Brooklyn, NY 11225
                                           (718) 604-3072
                                           dzelman@civrtslaw.com

21